ROLAND H. HARTLEY *vs.* JOSEPH CROZE.

April 27, 1888.

**Sale of Decedent's Real Estate—Notice of Place of Sale.**—A notice of administrator's sale of real estate, designating "Duluth, in the county of St. Louis," as the place of sale, the place of sale not being otherwise stated, *held* insufficient, and the sale void.

**Same—Notice of Time of Sale.**—Nine days having elapsed between the completion of the last publication of the notice and the designated time of sale, the sale was void; the statute requiring the publication to be made for three weeks, successively, "next before such sale."

**Same—Void Sale.**—*Montour* v. *Purdy*, 11 Minn. 278, (384,) and other decisions, followed, in determining the validity of such a sale.

**Same—Curative Act held Inapplicable.**—The sale being void, Laws 1871, c. 57, (Gen. St. 1878, c. 57, § 54,) is inapplicable, and does not authorize the confirmation of the same.

**Same—Waiver of Statutory Requirements by Heir.**—An instrument executed by one interested in the estate, authorizing the administrator to sell "under the direction of the court," did not dispense with the necessity for complying with the statutory requirements.

Francis Morrisette, of Douglas county, Wisconsin, died in that county, intestate, in 1866, and one Nicholas Pulliott, of the same county, was duly appointed by the proper court of that county administrator of his estate, and qualified and received letters of administration. Morrisette died seized of an 160-acre tract in sections 13 and 14, and an 80-acre tract in section 15, in town 49, range 15, in St. Louis county in this state. No administration was taken out in this state, but on January 8, 1867, Pulliott filed in the probate court of St. Louis county a duly-authenticated transcript of his letters of administration, and of his bond and oath as administrator.

Proceedings for the sale of the decedent's real estate in St. Louis county, for payment of debts, were had in the probate court, resulting in a sale of the 160-acre tract to one R. G. Coburn, on June 29, 1867, which sale was confirmed by the probate court, July 1, 1867. By deed from Coburn and sundry mesne conveyances, the tract so sold was conveyed to Roland H. Hartley.

In June, 1887, Hartley presented to the district court for St. Louis county his petition for a confirmation of the sale, (pursuant to Laws 1871, c. 57; Gen. St. 1878, c. 57, § 54,) alleging, among other things, that he was a purchaser in good faith and for value, and without notice of any defects or irregularities in the proceedings concerning the administrator's sale, but that the records of the probate court show the following irregularities or defects in such proceedings:

1. That the notice of sale was published May 23d and 30th, and on June 6th and 13th, 1867, whereas the sale was noticed for and took place on June 29, 1867, "so that, strictly speaking, said notice was not published for the three successive weeks next before the date of said sale."

2. That the administrator's bond, required to be filed before making

the sale, "does not affirmatively appear to have been made and filed within the time prescribed by law."

3. "That the oath required by law to be taken before the fixing of the time and place of sale does not by such records affirmatively appear to have been taken as required by law."

The petition was opposed by Joseph Croze, a grantee of the heir-at-law of the deceased Francis Morrisette, who filed his answer putting in issue the good faith of Hartley and his want of notice, and insisting that the defects stated in the petition, and other defects in the proceedings, rendered the sale void.

The cause came on for hearing before *Stearns*, J., without a jury, and the records of the probate court, introduced in evidence, showed the following proceedings:

After the filing of the transcript of Pulliott's letters of administration, bond and oath, and on January 8, 1867, the probate court appointed commissioners to receive and adjust claims against the estate, the appointment being in the usual form. On July 23, 1867, the commissioners filed their report, dated February 21, 1867, and showing that the only claim presented was by R. G. Coburn, on a note of the decedent for $643.03, with sundry credits indorsed, the amount claimed to be due and allowed by the commissioners being $549.92, and there being no offsets.

On January 8, 1867, the probate court appointed appraisers of the estate of the decedent, who duly qualified; and on March 9, 1867, the inventory (which contained merely the two tracts of land before mentioned) and the appraisement were filed, the 160-acre tract being valued at $500, and the 80-acre tract at $240.

On March 11, 1867, Pulliott, as administrator, presented a petition, stating that all the personal estate that had come to his hands ($50) had been expended in paying the expenses of the decedent's last sickness and funeral and of the administration; that there were debts against the estate to the amount of about $700, and that the decedent died seized of the two tracts of land above mentioned, fully describing them. The petition also stated that Francis Morrisette, Jr., of Portage Lake, Michigan, and Lucie Morrisette, of Superior, Wisconsin, children and heirs of the decedent, were the only persons inter-

ested in the lands, and that it was necessary to sell part of the lands to pay the debts, and praying for a license to sell. On presentation of the petition the court ordered that it be heard on May 11th, and directed notice of the hearing to be given by publication, and mailing, and by personal service on all persons interested residing in St. Louis county, etc., but provided that if all persons interested in the estate should signify in writing their assent to the sale, the notice directed by the order might be dispensed with.

On May 11th, the petition coming on for hearing, the administrator filed the written assent of each of the two heirs, that of Francis (with whom his wife joined) being under seal and acknowledged, and containing also the following clause: "And we do hereby authorize and empower said administrator, so far as we are able, to make sale of said tract of land, under direction of said court, and to apply the avails of such sale to the settlement of the liabilities of said estate." The court thereupon made an order, bearing date May 11th, reciting the filing of the consent in writing of all parties interested, and that the sale was assented to by all persons interested, and that it appeared that the sale of the real estate described in the order was "necessary for the payment of valid claims against said deceased and the charges of administration," and ordering that the administrator be "and he is hereby licensed and authorized to sell the land described as follows, to wit"—describing the 160-acre tract. The order further required the administrator, before making sale, to take and subscribe an oath, as required by statute, and to give bond to the judge in the sum of $1,000, with sufficient surety or sureties to be approved by him, conditioned to sell, and to account for and dispose of the proceeds, as provided by law. The order also directed the administrator to cause notice of the time and place of holding the sale of the real estate to be posted in three of the most public places in St. Louis county, and to be published in the St. Paul Weekly Press for three weeks successively next before the sale, the notice to describe the lands with common certainty. It was further ordered that the sale should be in the county, at public vendue, between 9 A. M. and the setting of the sun the same day; and that immediately after the sale the administrator make report to the court.

The administrator's oath required by the order was taken and subscribed in Douglas county, Wisconsin, on May 13, 1867, and was filed in the probate court on May 25th.   His bond, also executed in Douglas county, with a single surety, also a resident of that county, and dated "the —th day of June, A. D. 1867," and without any justification by the surety, was filed in the probate court June 29, 1867. Endorsed upon it was an approval by the judge of probate, without date.

On June 29, 1867, the administrator filed his report of sale, stating that, pursuant to the order of license made May 11, 1867, "I did, three weeks before the day fixed upon for the sale, to wit, on the 5th day of June, A. D. 1867, cause to be posted in three of the most public places in the county a notice of the time, place, and terms of sale, as by the affidavit marked 'A' hereunto annexed will appear; that I caused a like notice to be published in the St. Paul Weekly Press, as by said order directed, for three weeks successively next before such sale, as by the affidavit marked 'B' hereunto annexed will appear."

The affidavit of posting, "A," referred to in the report of sale, is signed "J. R. Carey,"—the name of the judge of probate,—and the jurat, "subscribed and sworn to before me this 29th day of June, A. D. 1867," is not signed.   It states the posting of the notices by the affiant on June 5, 1867.

The affidavit of publication states that the notice of sale was published weekly for three successive weeks, the first publication being made May 23d, and the last June 13, 1867, etc.

The notice of sale, as it appears in the affidavits of posting, ("A,") and of publication, ("B,") bears date May 13, 1867, is properly entitled, and states that pursuant to the order of license, made May 11th, the administrator "will, on the 29th day of June, A. D. 1867, at ten o'clock in the forenoon, at Duluth in said county of St. Louis, offer for sale at public vendue the following described land, to wit, (describing the 160-acre tract.)   Terms cash."

There was no evidence as to whether the oath, taken May 13th, was or was not taken prior to the fixing of the time and place of sale by the notice, which also bears date May 13th.

The report of sale further states that "at the time and place men-

tioned in said notice, to wit, the 29th day of June, A. D. 1867, at ten o'clock in the forenoon, at Duluth in said county of St. Louis, at the office of the probate judge in said Duluth, (which said place is within the county wherein the said real estate is situated,) having first given bond, and taken and subscribed the oath, as directed in said order, I offered said real estate for sale at public vendue, upon the terms mentioned in said notice of sale; and Richard G. Coburn, of Superior, Wisconsin, having bid the sum of $549.92 for said real estate, which is known and described as [describing the 160-acre tract,] and the said Richard G. Coburn being the highest bidder therefor, the same was then and there struck off to him for said sum of $549.92, which sum was the amount of indebtedness due and owing to the said Richard G. Coburn from the estate of Francis Morrisette, Sr., deceased, as found and reported by the commissioners appointed by this court to receive, examine, and adjust claims against said estate. I further certify that the said Richard G. Coburn bid off, purchased, took, and accepted the aforesaid real estate in full satisfaction and payment of his claim and demand upon the foregoing estate, and thereupon fully discharged such claim, giving an acquittance thereof, and surrendering the securities held by him, said Coburn, against the property left by the deceased."

The report further states that the administrator is not interested, directly or indirectly, in the purchase; that the sale was legally made and fairly conducted; that the said sum of $549.92 is not disproportionate to the value of the property, and "that the said purchaser was the sole creditor of the estate of the deceased." The report was verified June 29, 1867, before the judge of probate.

On July 1, 1867, the probate court made an order confirming the sale, and directing the administrator to execute and deliver to the purchaser a good and sufficient deed. On the same day the administrator's deed to Coburn was executed and acknowledged, and on August 15, 1867, it was recorded.

It further appeared that on February 7, 1887, Francis Morrisette conveyed the 160-acre tract to Joseph Croze, the respondent, for $100. The court found, among other things, that the sale was made in good faith; that in the proceedings touching the administrator's sale there

were certain defects and irregularities, which did not render it absolutely void; "and that the purchase-money was not in fact paid to the administrator, but that the administrator received in lieu thereof a note of decedent to the purchaser, on which there was due an amount equal to the purchase-money, and that no intention existed by the purchaser at said administrator's sale to defraud or injure the heirs or devisees of said deceased." Judgment was ordered and entered for respondent, dismissing the proceedings, and the petitioner appealed.

The grounds of the decision in the district court are thus stated in the judge's memorandum:

"Had letters of administration been granted by the probate court of this county; had commissioners been regularly appointed to allow claims; had the purchaser's claim been duly allowed; had there been sufficient funds in the hands of the administrator, and all this made affirmatively to appear, I might regard a release of that claim as payment of the purchase-money. But in this case the only letters of administration were issued in Douglas county, Wisconsin; the purchaser was a resident of Wisconsin; it does not appear what claims may have been allowed against the estate by the court in Wisconsin. Under these circumstances I cannot regard the exchange of credits as payment of the purchase-money."

*Wm. W. Billson,* for appellant.

The exchange of credits between the administrator and the purchaser was a payment of the purchase-money within the meaning of the statute, as much so as if one had given his cheque for the price, and the other his cheque in payment of the note. *Eyles* v. *Ellis,* 4 Bing. 112. Anything a creditor may accept in discharge of an obligation for money is to all intents and purposes a payment and may be so pleaded. *Howe* v. *Mackay,* 5 Pick. 44; Leake, Cont. 889; *Spargo's Case,* L. R. 8 Ch. 407, 414; *Livingston* v. *Whiting,* 15 Q. B. 722; *Rance's Case,* L. R. 6 Ch. 104; *Gingell* v. *Perkins,* 4 Exch. 720. Where there is but one creditor there is no reason why such mode of payment should not be as much a payment of the purchase-money as it is on an execution sale. Freeman, Executions, § 300; Rorer, Jud. Sales (2d Ed.) §§ 1291-2; *Nichols* v. *Ketcham,* 19 John. 84, 92; *Russell* v. *Gibbs,* 5 Cow. 390. There is no proof that there were other

creditors, and, if there were, that fact would not invalidate the payment. Such mode of payment is beneficial to heirs or devisees, who alone are concerned with irregularities in a sale, which cannot be set up by a creditor to impeach it after confirmation. If other creditors were prejudiced, their remedy would be on the bond. This curative act of 1871 was made, not in the interest of creditors, but of purchasers on the one hand and heirs and devisees on the other. And in any case, at this time, after 20 years, payment of all debts against the estate must be presumed, and the burden of showing the contrary, and that there were creditors who were prejudiced, is upon the respondent.

The defects in the sale did not render it "absolutely void." By that term the legislature meant void beyond the constitutional power to cure by subsequent legislation. But here the court had jurisdiction, and the order of confirmation cured all defects and irregularities not jurisdictional. *Davis* v. *Hudson*, 29 Minn. 27. Any defect in the notice of time or place of sale is not incurable; for the legislature may authorize a private sale without any notice, and whatever the legislature might have dispensed with by prior statute it may dispense with by subsequent statute. Cooley, Const. Lim. 371; *Underwood* v. *Lilly*, 10 S. & R. 97; *Walpole* v. *Elliott*, 18 Ind. 258; *Andrews* v. *Russell*, 7 Blackf. 474; *Grimes* v. *Doe*, 8 Blackf. 371; *Sohier* v. *Mass. Gen. Hospital*, 3 Cush. 483, 492; *Lane* v. *Nelson*, 79 Pa. St. 407; *Weed* v. *Donovan*, 114 Mass. 181; *Selsby* v. *Redlon*, 19 Wis. 17; *Hasbrouck* v. *City of Milwaukee*, 13 Wis. 37, 50; *Wallace* v. *Feely*, 10 Daly, 331; *Boyce* v. *Sinclair*, 3 Bush, 261; *Beach* v. *Walker*, 6 Conn. 190; *Goshen* v. *Stonington*, 4 Conn. 209; *Mather* v. *Chapman*, 6 Conn. 54; *Muncie Nat. Bank* v. *Miller*, 91 Ind. 441; *Exchange Bank Tax Cases*, 21 Fed. Rep. 99; *Ferguson* v. *Williams*, 58 Iowa, 717; *Reid* v. *Hart*, 45 Ark. 41; *U. S. Mtge. Co.* v. *Gross*, 93 Ill. 483.

Except for the fact that non-residents are excepted from the limitation in Gen. St. 1878, c. 57, § 50, any right to attack this sale would have been barred in five years from the sale, and no such proceeding as this would be necessary. And even within five years, although section 51 allows a sale to be attacked collaterally by the heir for defects that would otherwise be cured by the order of confirma-

tion, (as for failure (2) to give bond, or (3) to take the oath, or (4) to give the notice of the time and place of sale required by the chapter,) yet these defects, though they render the sale *voidable* by the heir, do not render it "absolutely void" and therefore not curable by the act of 1871. If that act is to have any operation, the defects enumerated in section 51 are the very defects it cures, for jurisdictional defects, such as render a sale "absolutely void," are by their nature incurable even by the aid of legislation; and other defects, except those specified in section 51, are cured by the order of confirmation. If the defects specified in section 51 made the sale "absolutely void," they could be asserted against the purchaser even by a stranger to the decedent's title, claiming under title paramount, and although the heir acquiesced in the sale. · This sale being therefore merely voidable by the heir, and not "absolutely void," is within the purview of the act of 1871, and no more fitting case could arise for the application of the remedy therein provided.

*Ensign, Cash & Williams*, for respondent.

DICKINSON, J.[1] By chapter 57, Laws 1871, (Gen. St. 1878, *c.* 57, §§ 54 *et seq.*,) it was enacted that "whenever a sale of real estate, or any interest therein, has heretofore been made by any administrator, executor, or guardian in good faith, and the purchase-money in fact paid, and any defects or irregularities have occurred in proceedings touching such sale which did not render such sale absolutely void, such defects and irregularities may be rectified, and the sale confirmed, by the district court, * * * in the manner provided in this act." The appellant, Hartley, claiming title to certain lands in St. Louis county, acquired through a sale made in 1867 by a foreign administrator, under a license from the probate court of that county, instituted this proceeding by petition, as prescribed by the above statute, for a confirmation of that sale. Among other alleged defects affecting the sale were the following: (1) The notice of sale designated "Duluth, in said county of St. Louis," as the place of sale, no more particular designation being made. The sale was made at the office of the judge of the probate court in Duluth. (2) The notice of

---

[1] Mitchell, J., did not hear the argument, nor participate in this decision.

sale was published on the 23d and 30th days of May, and the 6th and 13th of June, (but not thereafter,) naming the 29th day of June as the day of sale, and on that day the sale was made. In both these particulars the notice was insufficient to authorize a sale. The statute (Gen. St. 1866, c. 57, § 35) required a notice of the time and "place" of the sale to be published and posted in the manner specified. Merely naming the town in which the sale was to be made did not comply with this requirement. In legal effect, it was no notice. The same statute required the notice to be published "for three weeks, successively, next before such sale." There being an interval of nine days between the completion of the last publication and the day of sale, the defect is obvious.

If, by reason of these defects the sale was void, the very terms of the statute relied upon as authorizing the relief sought in this proceeding show that the case is not within its scope, and the court was right in dismissing it. Under the decisions of this court construing statutes, which, in substantially the form of our present law, (Gen. St. 1878, c. 57, § 51,) have long been in force, (Gen. St. 1866, c. 57, § 47; Pub. St. 1858, c. 38, § 23; Id. c. 39, § 52,) and upon the authority of other courts construing statutes like ours, it must be held that, if the conditions named in such statute respecting the proceedings preliminary to and including the sale were not complied with, the sale was void. *Babcock* v. *Cobb*, 11 Minn. 247, (347, 354;) *Montour* v. *Purdy*, Id. 278, (384,) (88 Am. Dec. 88;) *Davis* v. *Hudson*, 29 Minn. 27, (11 N. W. Rep. 136;) *Ryder* v. *Flanders*, 30 Mich. 336, 344; *McCrubb* v. *Bray*, 36 Wis. 333; *Mohr* v. *Porter*, 51 Wis. 487, 500, (8 N. W. Rep. 364.) Among these conditions, the fourth is that there had been given "notice of the time and place of sale as in this chapter prescribed;" and apart from the effect to be given to that statute, we entertain no doubt that, in the absence of a valid notice of sale, the sale must be treated as void.

It is unnecessary to consider some other grounds which have been urged in opposition to this application. It is not to be understood from our not having referred to the particular reason which the court below assigned for its conclusion that we deem that to have been insufficient.

The instrument executed by this respondent's grantor, an heir of the intestate, reciting the fact of petition having been made to the court for a license to sell, and authorizing and empowering the administrator to sell the land, "under direction of the said court," was effectual as a waiver of notice of the application for license to sell. It did not dispense with the necessity for observing the statutory requirements respecting the sale, to which we have referred.

Judgment affirmed.