EMMA A. KURTZ and Another v. ST. PAUL AND DULUTH RAILROAD COMPANY and Others.[1]

May 6, 1895.

Nos. 9081—(28).

**Sale of Minor's Land—Collateral Attack.**
    G. S. 1894, § 4612, construed, and *held* that where it appears from the records of a probate court relating to a sale of real estate by a guardian or an executor or an administrator, which are complete and regular upon their face, that each and all of the essentials of a valid sale named in this statute have been complied with, such records import unimpeachable verity, and the presumptions arising therefrom cannot be rebutted in a collateral proceeding by any evidence dehors the record.   It is only

[1] Reported in 63 N. W. 1.

when the record is silent, or wanting in material particulars, as to any of these essentials, that the sale may be. collaterally attacked by virtue of this statute; that is, when it does not appear from the record that the essentials have been complied with.

### Disclaimer and Admission of Grantor.

The disclaimer and admissions of a grantor, made after he has parted with his title to and possession of the land, are not admissible to impeach the title of his grantee.

### Judgment of Probate Court as Evidence.

The proceedings and judgments of a probate court relating to a sale of land affect the title to the land; they are a link in the chain of title, —as much so as a voluntary conveyance would be; and they are competent and admissible in evidence against the whole world.

Appeal by defendants St. Paul and Duluth Railroad Company and Northern Pacific Railroad Company from a judgment of the district court for St. Louis county, entered in pursuance of the findings and order of H. F. Greene, Esq., referee. Reversed.

*Bunn & Hadley* and *J. D. Armstrong*, for appellants.

*H. S. Lord*, and *J. W. Bull*, for respondents.

START, C. J. Action of ejectment to recover possession of the undivided two-thirds of a tract of land occupied by the defendant railway companies for railroad purposes, as a right of way. A former appeal in this case was determined in 48 Minn. 339, 51 N. W. 221, to which decision reference is here made for a fuller statement of this case. The first trial and appeal resulted in final judgment for the defendants, and after the case was remitted to the district court the plaintiffs paid the costs, and took a second trial. Thereafter, pursuant to the order of the court, they amended their complaint by making the defendants Hiram Hayes and the West Duluth Land Company parties, and by adding to their original complaint allegations, among others, to the effect that the last-named defendants claimed some title to or interest in the land in question adverse to the title of the plaintiffs, by reason of the guardian's sale and deed considered by this court on the former appeal; that this tract of land—the right of way—was not intended to be included in such sale and deed, and in fact was never sold by the guardian, or purchased by the defendant Hayes. The

defendant Hayes answered, and admitted the foregoing allegations of the amended complaint, except the one that he claimed an interest in the land. He disclaimed any title to or interest in the land, and affirmatively alleged that it was included in the deed to him by the mutual mistake of the guardian and himself. The defendant land company also answered, denying the allegations of the amended complaint, and asserted that it was the owner of the land by virtue of the guardian's sale and deed to Hayes, and divers mesne conveyances from him to it. It also alleged that it had acquired the title thereto which the plaintiff George Leidner claimed to have. Upon the trial before a referee, the original defendants moved to strike the amended complaint from the files. The motion was denied. Then they demurred to the amended complaint, which was overruled. The trial proceeded, resulting in a judgment, in effect, that the plaintiff Emma Kurtz and the defendant land company (as the grantee, pending the action, of the plaintiff George Leidner) were each the owner of an undivided one-third of the land. The original defendants appealed from this judgment. The view we take of this case renders any explanation and discussion of the questions presented by the record in reference to the order for bringing in additional defendants, and the amended complaint, unnecessary.

It appears from the record in this case that the plaintiffs on May 20, 1872, were minors, and the owners of an undivided two-thirds of the land, and on that day their guardian, as disclosed upon the face of the records of the proceedings in the probate court of the county of St. Louis, duly sold the land in controversy in this case, with other land of which it was a part, to the defendant Hiram Hayes, which sale was duly confirmed by the probate court. Thereupon the guardian, pursuant to such sale and order of confirmation, duly made and delivered to Hayes a deed in which the tract in controversy was included in the larger parcel therein described and thereby conveyed, and he accepted the deed, paid the purchase price, and on October 2, 1872, conveyed all of the land described in the guardian's deed to Ernest J. Norton. He, however, excepted from the covenant against incumbrances in his deed to Norton the right of way of the railroad company (the tract in dispute) over the land. The defendant land company, by mesne

conveyances from Norton, has succeeded to and has acquired all the title to the land in question that Hayes acquired under the guardian's sale and deed to him.    The original defendants have been in the adverse possession of the land since September 1, 1871, but offered on the trial no other evidence of title in themselves, relying upon the alleged outstanding title in Hayes and his grantees to defeat the plaintiffs' action.    Upon the trial the evidence received on the first trial was introduced, also the testimony of the defendant Hayes (in the form of a letter designated as "Exhibit A" in the record), tending to show, as plaintiffs claim, that the right of way was never in fact sold to him by the guardian, or paid for by him, and was not intended to be included in the guardian's deed. Upon this evidence, and the admission and disclaimer of Hayes in his answer, the referee found that the land constituting the right of way was never sold at the guardian's sale, and that the deed to Hayes, so far as it included this tract, was void.

1. Counsel for respondents seem to attach controlling importance to the disclaimer of Hayes, and the admission in his answer. Neither has anything to do with this case, for they were made more than 21 years after he had conveyed all of his interest in the land, and parted with the possession thereof.    The disclaimer and admissions of a grantor, made after he has parted with his title to and possession of property, are not admissible to impeach the title of his grantee, immediate or remote.

2. This leaves only the evidence of the defendant Hayes to support the finding and conclusion of the referee that this land was never sold at the guardian's sale, and that the guardian's deed, as to it, is void.    We are of the opinion that it is entirely insufficient and ineffectual to overcome the presumptions arising from the records of the proceedings, orders, and judgments of the probate court in regard to this guardian's sale.    The petition for license to sell, the order and license for sale, the notice of the time and place of the sale, the report thereof, and the order confirming the sale, as shown by the probate records, were regular and complete; and each and all of them, and the deed made and delivered to Hayes by the guardian, described the whole land, which included the right of way, without exception or reservation, and this court decided upon the former appeal that the land in controversy

was included in such sale and deed, as shown by the records and deed. Such being the character of the records of the proceedings and judgment of the probate court, the question is, can they be impeached collaterally, and the presumptions arising therefrom be rebutted by evidence dehors the record? There are some obiter statements and suggestions in some of our former decisions indicating that the question might be answered in the affirmative, but the whole trend of the decisions of this court is in the opposite direction; and, after a somewhat careful examination of the question, we have reached the conclusion that it must be answered in the negative. The probate courts of this state, by virtue of the constitution, are courts of record, and of superior jurisdiction; and, except as modified by G. S. 1894, § 4612, their records import absolute verity. Their proceedings possess the same presumptions of jurisdiction possessed by courts of superior common-law jurisdiction, and their records and judgments cannot be impeached in collateral proceedings. Dayton v. Mintzer, 22 Minn. 393; Davis v. Hudson, 29 Minn. 27, 11 N. W. 136; Curran v. Kuby, 37 Minn. 330, 33 N. W. 907; Menage v. Jones, 40 Minn. 254, 41 N. W. 972.

The extent of the modification of the rule made by G. S. 1894, § 4612, has never been directly decided by this court. It is settled by repeated decisions that, where it does not affirmatively appear from the records of the probate court that any of the five essentials to a valid sale enumerated in this statute have been complied with, the statute so far modifies the rule that in such cases the proceedings and judgment of the court relating to the sale may be assailed collaterally. But they are all cases where the record itself was incomplete, and failed to show that these essentials had been complied with. For example, in the case of Babcock v. Cobb, 11 Minn. 247 (347), it did not appear from the record that the sale bond had been given, and the sale for that reason was held void; and in Hartley v. Croze, 38 Minn. 325, 37 N. W. 449, it did not appear from the record that due notice of the time and place of the sale had been given, but on the contrary the record disclosed that the only place of sale named in the notice was "Duluth, in the county of St. Louis," and that the notice was not published the required length of time. And we are not advised of a single case in this court where a sale by a guardian or an exec-

utor or administrator has been held invalid, when attacked collaterally, unless the records in the probate court relating to such sales failed to disclose that one or more of the essentials, named in this statute, of a valid sale, had been complied with.

The history and purpose of this statute will materially aid us in ascertaining how far it modifies the general rule we have stated. It originated in Massachusetts, and was included in Rev. St. 1836, c. 71, § 38. At the time it was adopted it was the accepted doctrine of the courts of that state that all the requirements of the statute relating to the sale of real estate in the probate court must be substantially complied with, or the purchaser acquired no title. Such courts were held to be courts of special and limited jurisdiction; their records did not import absolute verity; there was no presumption in favor of their jurisdiction, and the regularity of their proceedings and decrees, in cases where the records were silent, or wanting in essential particulars. And manifestly this statute was enacted to obviate the insecurity of titles resulting from this application of the doctrine of special and limited jurisdiction to probate courts of that state. Gary, Probate Law, § 538. It sought to give repose and certainty to such titles, by providing that if it appeared (that is, from the records) that the essentials to a valid sale named in the statute had been complied with, the sale should not be avoided on account of any irregularity in the proceedings. It was, in the state of its origin, plainly a curative statute, designed to limit the causes for which a sale could be assailed collaterally, and not to open the door for the impeachment of the sale where, except for the statute, it would be unimpeachable. This statute found its way to Michigan,[2] thence to Wisconsin,[3] and Minnesota inherited it from the latter state. Rev. St. 1851, c. 52, § 52. It has been re-enacted since the adoption of our constitution, providing for probate courts, and making them courts of record and of superior jurisdiction, as to all subject-matters which it has committed to their jurisdiction.

The legal effect of the statute, since the organization of our probate courts under the constitution, is to modify in some degree the rule as to the verity of the records in respect to the essentials of

[2] Rev. St. 1838, pt. 2, tit. 5, c. 1, § 36.     [3] Rev. St. 1849, c. 65, § 52.

a valid sale named in this statute.. In determining the degree of such modification, this statute must be treated and construed as a curative one. So construing it, we hold that, where it does not appear from the records of the probate court relating to a sale of real estate by a guardian or an executor or administrator, that all of the essentials of a valid sale named in this statute have been complied with (that is, when the record is silent or wanting in material particulars as to any of these essentials), the sale may be attacked collaterally; and to this extent only the general rule as to the verity of probate court records has been modified by this statute, G. S. 1894, § 4612, and to this extent only the proceedings may be assailed collaterally by virtue of this statute. But where it does appear from such records, complete and regular on their face, that each and all of such essentials have been complied with, such records import unimpeachable verity, and the presumptions arising therefrom cannot be rebutted in a collateral proceeding by any evidence dehors the record. To hold otherwise would be a practical return to the old theory that the probate courts of this state are simply courts of special and limited jurisdiction, with all its absurdities and evils, and would render the title to all property acquired by judicial sales in such courts precarious and unstable, by taking away the unimpeachable verity of the record, and substituting for it the uncertainties of parol evidence.

3. It is true, as claimed by counsel for the respondents, that as a general rule a judgment binds only parties and privies. The rule, however, has no application to this case, for all judgments whatever are conclusive proof, against all the world, of the existence of that state of things which they actually affect; and they are relevant when their own existence, or the existence of things so affected, is a fact in issue, or relevant to the issue. Steph. Dig. Ev. art. 40. Applying the rule to this case, the proceedings and judgment in the probate court affected the title to the land in dispute. They are a link in the chain of such title,—as much so as a voluntary conveyance would be,—and are competent and admissible in evidence, for that purpose, against the whole world. 2 Freem. Judg. § 416; 2 Black, Judg. § 607.

4. The finding of the referee to the effect that the land in ques-

tion in this action was not included in the guardian's sale being unsupported by any competent evidence, the judgment must be reversed.

So ordered.