THOMAS McNAMARA and Others v. MICHAEL CASSERLY and Others.[1]

June 11, 1895.

Nos. 9199—(14).

**Probate Court—Decree of Distribution—Effect.**

In a decree of distribution in the probate court it is recited that the petitioner, claiming to be the sole heir, had filed a bond conditioned "to deliver said estate to any heir of said deceased who shall establish a title thereto paramount to hers." The decree then adjudges "that the above-described real estate be, and the same is hereby, assigned" to said petitioner "as sole heir" of said deceased. The bond as recited was then on file. There was no provision in the statute for the filing of such a bond. The petitioner was not in fact an heir of the deceased. *Held*, the decree did not assign the property on the condition that the petitioner was the sole heir. Such assignment was absolute, not conditional; and an innocent purchaser from said petitioner under said decree is not estopped, as against the true heir, from asserting title in himself.

**Same—Subsequent Decree—Constitution.**

G. S. 1894, § 4749 (passed in 1883), provides, in substance, that in all cases where a decree of distribution is entered in the probate court without notice, any party interested in the real estate it purports to assign may proceed by petition and on published notice to have a new decree entered assigning such real estate to the persons entitled thereto. The decree of distribution here in question was entered in 1866. It did not appear on its face whether or not it was entered without notice, and for the purposes of this case it is conceded that such notice is jurisdictional. In 1888— nearly 22 years after the entry of said decree—the true heirs proceeded under said statute to enter a second decree, and one was entered accordingly, purporting to assign said real estate to them. The statute was complied with in all respects. No personal notice of the proceedings for the

[1] Reported in 63 N. W. 880.

second decree was ever given to those holding the real estate under the first decree, though they resided in the state, and could readily be found therein, and were actually occupying said real estate. They never appeared in the proceedings. *Held*, the first decree was valid on its face, the proceedings in which it was entered had long ceased to be pending for any purpose, and under a statute thereafter passed the rights of said parties under the first decree could only be attacked by a new proceeding in which the court acquired jurisdiction anew; that the legislature intended that such new proceedings should, in effect, set aside the first decree; that this new proceeding, so far as it is one to set aside this decree, is a mere substitute for proceedings in personam at common law, as administered in courts of equity and of common law; that under the constitution said parties were entitled to personal notice of the proceedings; as to them, notice by publication is not due process of law, and the statute, so far as it attempts to make such notice sufficient as to such residents who can be readily found in the state is unconstitutional.

Action in the district court for Hennepin county by Bridget Mc-Namara against Michael Casserly, Minneapolis and St. Louis Railway Company, W. H. Truesdale, as receiver of said railway company, and others. After the trial and decision, the plaintiff having died, Thomas McNamara and others were substituted as plaintiffs. From an order, Hooker, J., denying a motion for a new trial, plaintiffs appealed. Affirmed.

*W. R. Cray, James I. Best*, and *M. B. Koon*, for appellants.

*Albert E. Clarke* and *Wilbur F. Booth*, for respondents railway company and W. H. Truesdale, receiver.

CANTY, J. This is an action for partition, but the real purpose of the action is to try the title to eleven-twelfths of the real estate described in the complaint. The heirs of Michael Cassidy (or Casserly), some of whom are plaintiffs and the others defendants, claim that they are the owners of said eleven-twelfths, and that the defendants Beard and the railway company are the owners of the other one-twelfth of said real estate, while the railway company claims that it is the owner of the whole thereof. The railway company claims title (1) by reason of a tax title, (2) by reason of adverse possession, and (3) by reason of a decree of distribution made by the probate court in the proceedings in the estate of said Michael Cassidy, deceased. On the trial in the court below without a jury the court found against the railway company on its claim under the tax

title and on its claim of adverse possession, but found in its favor on its claim to be the owner of all of said real estate under the decree of distribution, and ordered judgment confirming its title to all of said real estate. From an order denying the motion of plaintiffs for a new trial, they appeal.

It is only necessary on this appeal to consider the railway company's claim of title under the decree of distribution. In March, 1856, three government lots, including the land in controversy, were conveyed by patent of the United States government to said Michael Cassidy. On April 1, 1864, he died intestate, leaving no wife or issue and no father or mother surviving him. On October 5, 1865, Margaret Carney, his niece, claiming to be his sole heir at law, filed in the probate court a petition for administration of his estate, and such proceedings were thereupon had that Bernard Cain was appointed administrator of said estate and, on March 27, 1866, letters of administration were issued to him.

On August 4, 1866, said Margaret Carney, by the name of Margaret Horen, filed her petition in the probate court, in which she states that she had in the meantime become the wife of one John Horen, and that "said deceased died without leaving a wife or any issue, he never having been married; that he has no father or mother, brothers or sisters, or any of them, living; no uncles or aunts, or any of them, living; and no nephews or nieces living, except your petitioner; and that, therefore, she is the sole and only heir of such deceased." She further avers that said deceased left no debts, but, "for fear there may be some relative of said deceased of nearer kin to him than your petitioner, and therefore entitled to said estate, your petitioner stands ready to give a bond to the judge of said court in such sum as he shall fix, conditioned to pay all debts and liabilities of said deceased, and all charges chargeable on his estate, and also conditioned to return said estate, or its equivalent, to any heir or heirs of said deceased who may be hereafter entitled to the same, should any be discovered." The prayer of the petition is that the estate of said deceased be assigned to her. On August 6, 1866, the probate judge filed his order reciting said prior proceedings, and in which "it is ordered that said Margaret Horen give bond to the judge of said court in the sum of fifteen hundred dollars, conditioned to pay all the debts of said deceased, and charges chargeable on his

estate, and to deliver to any heir of said deceased who shall prove a title paramount to said Margaret Horen to the above estate." On the same day she filed the bond so ordered, which was then approved by said probate judge. Thereafter, on August 15, 1866, Bernard Cain filed a petition, in which he supports the claim of said Margaret Horen, and asks that said estate be assigned to her.

On the same day the decree of the probate court assigning said estate to said Margaret Horen was filed, in which it is recited that said Michael Cassidy died seised of said real estate and that said Margaret Horen is his sole heir at law. The order then states: "And it further appearing to said court that said Margaret Horen has filed her bond in said court, duly approved, conditioned to pay all the debts of said deceased, and all charges chargeable on his estate, and to deliver said estate to any heirs of said deceased who shall establish a title thereto paramount to hers, it is therefore ordered, adjudged, and decreed, and this court, by virtue and in pursuance of the statute in such case made and provided, doth order, adjudge, and decree that the above-described real estate be, and the same is hereby, assigned to the aforesaid Margaret Horen, as sole heir of the aforesaid Michael Cassidy, deceased." Through subsequent conveyances the defendant railway company holds the title thus obtained by Margaret Horen to the part of said land here in controversy.

It appears by the evidence that at the time of said decree Margaret Horen was not in fact an heir of said Michael Cassidy at all; that her father, who was then living, was the brother of said deceased, and one of his heirs, the other heirs being another brother, a sister, and the heirs of two deceased sisters of said Michael Cassidy. But it is conceded by appellants that said Margaret Horen has since inherited from her said father said one-twelfth admitted to be in said company.

1. It is contended by appellants that said decree of distribution is conditional, and not absolute; that it is conditioned on Margaret Horen being in fact the sole heir of Michael Cassidy. We cannot agree with counsel. The estate is by the decree assigned absolutely to her as his sole heir. The bond is not referred to except in the recitals of the decree. Neither is it there referred to in such a way as to incorporate a condition or defeasance into the decree.

There was no authority, under the statute, for filing such a bond; and for the purposes of this action we cannot see that it has any effect except as a sort of additional proof or assurance to the probate judge that she was in fact the sole heir. Neither are innocent purchasers in good faith from her estopped by said bond from asserting their title as against the true heirs.

2. There is no proof or recital in the record of any notice having been given of the hearing of the application for a decree of distribution. Neither does it appear, nor can it be inferred from the record, that such notice was not given. At the time said decree was entered, none of the true heirs of Michael Cassidy, deceased, were residents of this state, or had any agent, attorney, or guardian in this state; and it is contended by the respondent company that under these circumstances the statute did not require or contemplate that any notice should be given them.

G. S. 1866, c. 56, § 8, provided: "Such partition and distribution may be ordered on the petition of any of the persons interested; but before any partition is ordered as directed in this chapter, notice shall be given to all persons interested, who reside in this state, or their guardians, and to the agents, attorneys or guardians, if there are any in this state, of such as reside out of the state, either personally or by public notice, as the probate court shall direct." It is contended by said respondent that, the probate court having acquired jurisdiction of the estate in the first instance, such jurisdiction continued as to such nonresidents for the purpose of the decree of distribution. In answer to this we will say that if such jurisdiction does continue for this purpose, it is only by implication. Such continuance of jurisdiction is wholly against the general theory of our probate procedure. As to any such resident of this state, notice of such hearing is jurisdictional. Wood v. Myrick, 16 Minn. 447 (494); Greenwood v. Murray, 28 Minn. 120, 9 N. W. 629. It is held in Wisconsin, under a statute the same as ours, that the giving of notice to such a nonresident is jurisdictional, and a failure to give it is fatal to the decree of distribution. Ruth v. Oberbrunner, 40 Wis. 238.

Without deciding the question, we will concede, for the purposes of this case, that the giving of some reasonable notice to such nonresidents is jurisdictional, and the failure to give it would be fatal

to this decree. But, as before stated, the decree of distribution is not void on its face. While the petition of the administrator, Cain, was filed on the same day that this decree was entered, the petition of Margaret Horen was filed eleven days before the day on which it was entered, and we cannot say that this was not sufficient time in which to give public notice to nonresidents. In our opinion, it is simply a case of omission from the record of proof that notice was given. But the judgment of a court of record cannot be impeached collaterally by showing that a jurisdictional notice was never in fact given, even if the record is silent as to the giving of such notice. 1 Black, Judgm. § 271. But we are of the opinion that the attack made on this decree was not a collateral attack.

On March 16, 1888,—nearly 22 years after the filing of said decree,—Catherine Scully, one of said heirs, filed in said probate court a petition in which the names of all the heirs of said Michael Cassidy are stated, and in which it is alleged that said decree or pretended decree was entered without giving any notice of the application for the same, and praying that a decree be entered, assigning said estate to the persons entitled thereto. This petition was filed under G. S. 1894, § 4749, which was passed in 1883, amended in 1885, and reads as follows:

"In any case where a decree has heretofore been made, or shall hereafter be made, without notice, by a probate court, purporting to assign the estate of a deceased person, or the residue thereof, to the person or persons entitled thereto, any person interested in any real estate embraced within the terms of such decree, whether as heir or devisee of such deceased person, or as grantee of any heir or devisee, may apply to said court to have the said real estate of such deceased person, or the portion thereof in which the applicant is interested, assigned to the person or persons entitled thereto; and thereupon such court shall by order appoint a time for hearing said application, and shall direct notice of such hearing to be given by publication of said order in a newspaper published in the county where said court is held, and named in the order, for three weeks successively, at least once in each week; and upon the hearing, unless it appears that there are debts or claims existing against the deceased or the estate, not paid or provided for, the

probate court shall enter a decree assigning said real estate to the person or persons entitled thereto."

On the filing of said petition, a time was appointed for hearing the same, and notice of such hearing given by publication, as provided in said statute. No one appeared to oppose the proceeding, and the decree provided for by this statute was entered, purporting to assign to said heirs said three government lots of which said Michael Cassidy died seised. The proceedings complied with said statute in all respects. No personal notice of said hearing was ever given to any of the persons or corporations holding or claiming said land under said first decree, and none of them appeared in said proceedings in which said second decree was entered.

It seems to us that by the statute these proceedings were intended as a direct attack on the first decree, and, if they are anything, they are a direct attack on such decree. While the statute does not provide for setting aside the first decree on the entry of the second decree, and the second decree entered herein does not formally declare that the first decree is set aside, yet this must be the legal effect of the second decree if it is in other respects valid, and the effect the legislature intended it should have. We are of the opinion that the legislature can give the probate court jurisdiction to set aside its own void decrees. Whether the decree is void on its face or not, if in fact absolutely void for want of jurisdiction to enter it, it cannot be made valid by the denial of a remedy for determining the want of jurisdiction, or of a court in which the determination may be had. A judgment absolutely void is not made valid by the lapse of time. Feikert v. Wilson, 38 Minn. 341, 37 N. W. 585; Heffner v. Gunz, 29 Minn. 108, 12 N. W. 342. The probate court is a court of record of superior jurisdiction though the jurisdiction is limited to certain specified subjects. Davis v. Hudson, 29 Minn. 27, 11 N. W. 136.

Keeping these things in view, we cannot hold that it is not competent for the legislature to give the probate court power to set aside its own void decrees, and, as incidental to the exercise of that power, to inquire into the fact of jurisdiction to enter a decree not void on its face, and determine whether or not such decree is in fact void for reasons not appearing on its face. The entry of such a void decree is not an act by which the probate court exhausted

its jurisdiction by the exercise of that jurisdiction, for the simple reason that it never did exercise it. Even where similar probate courts were not, by the constitution, courts of record, it has been held that without any express legislative authority they had the power, in a proper case, to set aside a decree as void, rehear the matter, and enter a valid decree. See the cases cited in Waters v. Stickney, 12 Allen, 1. See, also, Jenks v. Howland, 3 Gray, 536; Cleveland v. Quilty, 128 Mass. 578; Roy v. Segrist, 19 Ala. 810; In re Lawrence's Will, 7 N. J. Eq. 215.

But while it was competent to vest the probate court with power to set aside its own void decree, and proceed anew to hear the matter and enter a proper decree, was it competent, at least in a case like the one at bar, to vest this court with the power to do this, so as to bind those holding under the former decree, and residing within the jurisdiction, without giving them personal notice of the proceedings? As to such persons, and in such a case, is notice by publication due process of law? The first decree was fair on its face, and stood unquestioned for nearly 22 years. On the faith of it, all the property it purported to assign had been conveyed and reconveyed. On the faith of this decree the defendant railway com· pany purchased the small portion of this property here in question, took possession of it in 1879, and, before the entry of the second decree in 1888, had constructed machine shops thereon at the ex· pense of $27,000. It has since, in apparent ignorance of the entry of the second decree, expended $28,000 more in making similar im· provements. For the purpose of trying the title to real estate in a controversy between private individuals, can the legislature provide a remedy which operates like a thief in the night to divest a person of his property without any personal notice, when he resides within the jurisdiction, can readily be found, and is actually occupying the property?

There seems to be an impression that in all kinds of proceedings in the probate court service by publication of jurisdictional notice or process on residents of the state is sufficient without personal service if the legislature so provide; that in all cases where it is so provided such service by publication is due process of law. Such service is sufficient in many proceedings in the probate court, but in others it is not. Much of the jurisdiction of the old court of

equity, and some of the jurisdiction of the courts of common law, over the real estate of deceased persons and the estates of minors and persons under guardianship, has been transferred to the probate court. See Gary, Prob. Law, §§ 21, 22. But transferring this jurisdiction to the probate court has not done away with the constitutional provision that no man can be deprived of his property without due process of law. However, it does not follow from this that residents of the state are entitled to personal service of all jurisdictional process in the administration of such real estate and estates formerly administered in the courts of equity and of common law.

The probate court not only exercises the jurisdiction formerly exercised by the courts of common law and equity over the real estate of deceased persons, but it also exercises a jurisdiction over such real estate never exercised by those courts. The jurisdiction of the courts of common law and equity over such real estate was exercised by proceedings in personam. This was wholly inadequate to a complete and proper administration of such real estate. The legislature deemed it proper that the whole world should be bound by the administration proceedings, and to accomplish this provided a proceeding in rem. This proceeding is not according to the course of the common law, and is not a mere substitute for any proceeding known to the common law in the administration of such real estate, but its scope and purpose are wholly different. The change from the proceeding in personam to one in rem is not a mere evasion of the constitutional rights of parties who would be entitled to personal notice under the old form of procedure. On the contrary, the legislature have a right to say that when the owner dies the court shall seize his property, and by constructive notice compel all claimants to appear or be barred. It is a case where it is proper for the court to seize the rem, and by constructive notice make the whole world parties. Where all the world are in fact proper or necessary parties, the doctrine of due process of law does not prevent the legislature from adopting a more appropriate, adequate, and complete remedy than that known to the common law.

Again, whether the proceeding is one in rem or in personam, the legislature can provide that jurisdiction once acquired shall

continue for all purposes until the estate is fully administered, or the proceeding finally terminated, and that no notice except the first shall be jurisdictional. In fact, this is the ordinary rule in judicial proceedings without any express provision of statute, and it is held by many courts that jurisdiction once acquired in probate proceedings continues for the purpose of subsequent sales, decrees of distribution, and all other matters, and that the failure to give the statutory notice of any such subsequent proceeding is a mere irregularity, which can only be taken advantage of by motion or appeal. Grignon's Lessee v. Astor, 2 How. 319, McPherson v. Cunliff, 11 Serg. & R. 422; Florentine v. Barton, 2 Wall. 210; Beauregard v. New Orleans, 18 How. 497; Brown, Jur. p. 188, § 66; Id. p. 191, § 68, and note 1. See, also, cases cited by Dillon, Ch. J., in Good v. Norley, 28 Iowa, 188, 208. As before stated, this is not the theory of our probate procedure.

The legislature has seen fit to provide that at certain steps in the procedure, or for certain purposes, the court shall acquire jurisdiction anew, and that as to these the jurisdiction acquired at the commencement of the administration does not continue. Wood v. Myrick, and Greenwood v. Murray, supra; Montour v. Purdy, 11 Minn. 278 (384); Babcock v. Cobb, 11 Minn. 247 (347); Jacobs v. Fouse, 23 Minn. 51; Hartley v. Croze, 38 Minn. 325, 37 N. W. 449; Gary, Prob. Law, § 28. While notice of such subsequent proceedings is jurisdictional, the right to such notice is statutory, not constitutional. The legislature might have dispensed with such notice altogether, and provided that jurisdiction once acquired should continue for all purposes. Making such notice jurisdictional is a mere matter of legislative grace, an additional protection which a party could not claim as a constitutional right; and such notice may be given in any form the legislature deems proper. The party has no constitutional right to personal service of such a notice, even if he is a resident of the state, and can readily be found therein. But the right to proceed to set aside the first decree in this case without personal notice to the defendant company cannot be upheld on the ground that the right to notice was, as in such cases, a mere matter of legislative grace, and not a constitutional right. The right to notice was clearly not a matter of legislative grace. The decree and the proceedings in which it was entered had long since

ceased to be in fieri, or pending for any purpose. A subsequent act of the legislature could not ipso facto change the status of these proceedings, or reopen them. The decree must be attacked by a new proceeding.

Neither could this decree be attacked by a proceeding in rem, as was attempted by the proceedings resulting in the second decree. Conceding that said first decree was entered in a proceeding in rem, or in one partly in rem and partly in personam (compare Wood v. Myrick and Greenwood v. Murray, supra), it does not follow that it can be set aside by a new proceeding in rem. If, when the first decree was entered, all the world were parties, it was entered against all the world, and in favor of a particular individual. It is not void on its face, so that it does not affirmatively appear that this individual and her grantees had no rights, under the decree, to be protected. The decree is valid on its face, and a proceeding to set it aside involves the trial of a question of fact, which can only be tried in a proceeding in which the court has jurisdiction. The decree was the property of the individual in whose favor it was entered, and has since become the property of her grantees, and they alone are prejudiced by setting it aside. As before stated, this decree, and the proceedings in which it was entered, had long since ceased to be in fieri, or pending for any purpose. A law there-after passed, giving a right of attack on this decree by a proceeding in rem, while the parties holding under the decree are residents of the state, provides a mere substitute for a proceeding in personam, known to the common law and old equity practice as such, and is a mere evasion of the constitutional rights of the parties holding under the decree. They were entitled to personal notice of the attack on their rights, and the alleged proceeding in rem is not due process of law.

It is true that, if this decree was duly set aside, a proceeding in rem would be a proper proceeding in which to enter a new decree, as for that purpose all the world would be proper parties. But that is a very different matter. There is no occasion whatever for giving all the world notice of the attack on the first decree, or for giving any one notice except those holding under the first decree, and they are residents of this state, and can be readily ascertained. In Bardwell v. Collins, 44 Minn. 97, 46 N. W. 315, this court held

that a statute which provided for service of the summons by publication on resident defendants who can be found within the state in actions to foreclose mortgages or mechanics' liens is unconstitutional, for the reason that such service is not due process of law. See, also, Webster v. Reid, 11 How. 437; Brown v. Board of Levee Commrs., 50 Miss. 468.

It is even held in some states that a statute which provides that, in condemnation proceedings for laying out a highway, notice of the proceedings may be served on resident owners by publication, and need not be served on them personally, is unconstitutional, for the reason that such service is not due process of law. Kundinger v. City of Saginaw, 59 Mich. 355, 26 N. W. 634; State v. City of Fond du Lac, 42 Wis. 287; In re Smith's Petition, 9 Wash. 85, 37 Pac. 311, 494. While citing these cases as authority here, we do not wish to be understood as holding that this doctrine applies at all to service of notice in such condemnation proceedings.

As against the respondents claiming under the first decree, the second decree is null and void, and does not set aside or destroy the first decree. The first decree is valid on its face, cannot be impeached in this action, and must be held to have assigned the real estate in question, even as against the true heirs. For these reasons it is unnecessary to consider the question of the plaintiffs' laches.

This disposes of the case, and the order appealed from is affirmed.