PATRICK KELLY v. MARGARET KELLY.

April 22, 1898.

Nos. 11,019—(40).

Probate Court—Jurisdiction—Restoration of Insane Person to Capacity—G. S. 1894, § 4553—Payment of Fees on Hearing.

The constitution (article 6, § 7) provides that "a probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship." *Held,* that under such provision the probate court had jurisdiction to allow and order paid out of the estate of an insane person the witness fees and attorney fees incurred upon a hearing, had upon the petition of such insane person to have his restoration to capacity judicially determined, under G. S. 1894, § 4553.

In the matter of the guardianship of Patrick Kelly, application was made by said Kelly in the probate court for Ramsey county for the allowance, out of the estate, of certain fees and expenses incurred by him in a previous proceeding for the discharge of the

guardian and the restoration of the ward to capacity. The application was granted, and the order of allowance affirmed on appeal by the district court for Ramsey county. From an order of Bunn, J., denying her motion for a new trial, the guardian, Margaret Kelly, appealed. Affirmed.

*C. D. & Thos. D. O'Brien,* for appellant.

*Fayette Marsh* and *S. Blair McBeath,* for respondent.

BUCK, J.

On April 13, 1894, Patrick Kelly was duly adjudged insane by the probate court of Ramsey county, and his wife, Margaret Kelly, was duly appointed guardian of his person and estate, and ever since has been such guardian. About April 13, 1896, said Patrick Kelly applied to said probate court to have said guardian removed, and to be restored to his capacity. The application was made in writing by Fayette Marsh, his attorney in fact, and set forth various grounds for restoration; among others, that he was sane, and capable of attending to his own business; that he owned a large amount of money, exceeding $10,000, in various banks in the city of St. Paul; that the guardian was incompetent, and under the influence of her son, who was seeking to control said guardian and estate, to the great loss of said Patrick Kelly. It was also alleged in said petition that said Patrick Kelly was without means except said money in the hands of his guardian; that safely to proceed to the hearing of said matter, it would be necessary to subpœna numerous witnesses and experts to examine said Patrick Kelly, and testify in court as to his mental condition.

Upon the hearing the probate court made an order authorizing the petitioner to expend, under the direction and approval of the court, such sums as might be necessary to procure witnesses, medical experts, and counsel to aid said Patrick Kelly in the matter of the discharge of said guardian, and the restoration to capacity of said Patrick Kelly, said amount not to exceed the sum of $1,000, and ordered that said amounts be paid out of the estate of said Patrick Kelly, after an order of allowance issued by said probate court.

Subsequently, upon such petition, and pursuant to the terms of

said order, a hearing was duly had upon the question of the restoration to capacity of said Patrick Kelly, and three expert medical witnesses were sworn and examined upon the question of the capacity of said Patrick Kelly. Fayette Marsh and S. Blair McBeath represented him as counsel. Thereafter an application was made to said probate court for the allowance of counsel fees and witness fees incurred upon said hearing, and said probate court, by its order dated June 30, 1896, ordered and adjudged that the sum of $150 be paid said attorneys for their services in said matter, and the sum of $50 be paid said expert witness, and said guardian was ordered to pay the same accordingly. Said amounts so allowed were no more than the reasonable value of the services so rendered. The guardian appealed from this allowance by the probate court to the district court, where the order of the probate court was affirmed, and from the order of the district court denying the guardian's motion for a new trial this appeal is taken.

The only question raised is this: Did the probate court have jurisdiction to allow and order paid the attorney's fees and the fees of the expert medical witnesses out of the estate of said Patrick Kelly incurred on said hearing, as the petition was denied? The constitution (article 6, § 7) provides that a "probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship." It has been held by this court that such jurisdiction over persons under guardianship embraces jurisdiction over their affairs in general, including the management and disposition of their property. Jacobs v. Fouse, 23 Minn. 51.

G. S. 1894, § 4553, provides that any person who has been declared insane or incompetent, or the guardian or any relative or friend, may petition the probate court of the county in which he was declared insane or incompetent to have the fact of his restoration to capacity judicially determined. The court may fix a day for hearing, and cause notice to be given to the guardian, who, as well as any relative or friend, may contest the right to the relief demanded, and, in the discretion of the court, any person may make such contest. Witnesses may be required to appear and testify, and the court may, of its own motion, require such witnesses to appear and testify. If the person is found to be of sound mind,

and is capable of taking care of himself and his property, his restoration to capacity shall be adjudged, and the guardianship of such person cease. It was under the constitutional provision and the foregoing provisions of the statute that the probate court made the order in controversy, allowing attorney's fees and fees of the expert medical witnesses.

That the proceedings for the restoration of Kelly to capacity were lawful and proper, there can be no reasonable doubt. The probate court, before authorizing the hearing, or the expenditure of any money, must necessarily have determined that the contest was initiated in good faith, upon points on which either party might reasonably differ, and upon which the petitioner might properly claim the interposition of the court in his behalf; and, the court having so decided, he had the right under the statute to require the witnesses to appear and testify, and they would have been in contempt of court for neglect or refusal so to appear. The court possessing this compulsory power, and the witnesses obeying the process or order of the court, they were entitled to their fees after attendance and examination. G. S. 1894, § 5547, expressly provides

"That the judge of any court of record in this state, before whom any witness is summoned, or sworn and examined, as an expert in any profession or calling, may, in his discretion, allow such fees or compensation as, in his judgment, may be just and reasonable."

This section plainly permitted the court to allow the fees of the expert medical witnesses about which there is no controversy as to their being reasonable. There was no fund out of which they could or ought to be paid, except that owned by Kelly himself; and, as the proceeding was one for his benefit, the order for their payment out of such fund was proper and valid.

But we are of the opinion that the jurisdiction of the probate court to allow the witness fees and attorney's fees may stand on broader grounds. The insane are the wards of the probate court, and it controls their property, and guards their personal welfare. It may authorize the expenditure of money for their support out of their estate. From very early times the chancellor of England exercised jurisdiction over all such persons and their estates, and

this jurisdiction is now to a very great extent conferred upon our probate courts; the latter having certain equitable powers as in cases of this kind. See Barbo v. Rider, 67 Wis. 598, 31 N. W. 155.

If the probate court can, for the welfare of the insane, control the fund owned by him to the extent of ordering enough thereof to be applied to his clothing and other necessities, we see no well-grounded reason why it cannot allow a reasonable sum out of such estate to test the question of his right to be restored to capacity. Certainly, the liberty of the citizen is of more importance than the ordinary costs of a hearing of this kind. The proceedings were not hostile to the interests or rights of Patrick Kelly. They were intended for his benefit, duly authorized by the express terms of the statute. If the guardian has such control over the entire funds of the insane as completely to tie them up and successfully to oppose any hearing for restoration to capacity under the statute, it would thus practically become ineffectual for the purpose for which it was intended.

Section 4553 of the statute above referred to gave the insane the right to be heard, and to procure the attendance of witnesses in order to have the question of restoration judicially determined. This right to be heard includes the right to be heard by attorney, and for a reasonable compensation to be paid therefor where the proceedings were instituted in good faith. The same rule would apply in procuring necessary witnesses. Before any expenses were incurred or expenditures made, application was made to the probate court for leave to do so, and such application granted. A sound discretion was exercised by such court, and such proceedings were in no wise vexatious, and a refusal in such cases might frequently, in effect, amount to a denial of justice.

The test is not, and should not be, whether, on the hearing, it will always appear that the insane should be judicially and successfully restored to capacity, but whether there are good grounds in the first instance reasonably to believe that such will be the case. If so, the statute evidently contemplates that there shall be an honest and fair hearing, and not that all the funds shall be tied up in the hands of an obstinate or corrupt guardian, as might be the case, but that an insane man's own means may be used to restore him to

capacity, if possible, if the proper steps have been taken to this end. The right to a hearing is absolute. The petitioner's ultimate failure does not deprive him of the right to have his own means used to test the question of his continued insanity.

We are therefore of the opinion that the probate court had jurisdiction to allow the expenses incurred by Patrick Kelly on the hearing to be restored to capacity, and that the order of the district court affirming the order of said probate court was correct, and hence the order is affirmed.