STERLING, Respondent, v. LILY, Appellant.

(176 N. W. 990.)

(File No. 4590.    Opinion filed January 30, 1920.)

1. Appeals—Error—Appeal from Judgment After Sixty Days, Within, From New Trial, Abortive.

The decision in Keyes v. Baskerville, 42 S. D. 391, 170 N. W. 143, the appeal from the judgment, taken after sixty days from judgment but within sixty days from order denying new trial, will be dismissed as abortive.

2. Insurance—Life Insurance—Note for Premium—Dating Policy Back, Insured's Objection—Failure to Return Policy, Effect Re Note.

Where insured under a life insurance policy, signed an application therefor, the insurance agent having represented to insured that to date the policy back from date of application to insured's birthday would result in a lower rate, but insured claimed he did not understand it was to be dated back, and after receipt of policy wrote insurer he would not accept it because dated back, that he had given a note to pay a year's premium from date of application, and finally wrote that he wanted to know whether insurer would or not return the note, receiving response from the insurer that it would not return it, that insured had gotten (under policy) exactly what he had paid for; insured failing to return or offering to return the policy and taking no further action during its life; held, that insured's attitude was that he would not accept the policy as written, that he either wanted it corrected or his note returned; that by failing to rescind and taking no further steps, he acquiesced in that situation.

3. Negotiable Instruments—Note for Insurance Premium—Defense of Invalidity of Policy Because Dated Back; Holder in Due Course, Immateriality—Futile Defense to Policy; Effect Re Note.

In a suit for conversion of plaintiff's bank deposit by the bank which held plaintiff's note given to cover first year's premium on a life insurance policy, which he claimed was in-

·valid becuse policy was dated back of date of application for insurance, the bank, indorsee of note before maturity, having charged plaintiff's bank account with the amount of the note and returned note to him; **held**, that question whether the bank was a holder of the note in due course was immaterial; since, plaintiff's defense against the policy being unavailing becuse he failed to return or offered to return the policy, he cannot prevail against holder of note, even though latter was not a holder in due course.

4.  Negotiable Instruments—Payee's Indorsement, Evidence Of, Maker's Testimony to Indorsement, Sufficiency.

  The objection, by maker to a promissory note, that payee did not indorse same to present holder, is overcome by maker's testimony "that it now bears the indorsement of" _payee.

Appeal from Circuit Court, Day County. Hon. THOMAS L. BOUCK, Judge.

Action by O. A. Sterling against the Bank of Lily, a corporation, for conversion of plaintiff's deposit in defendant bank. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Appeal from judgment disregarded. Order reversed, and cause remanded for further proceedings.

*Waddel & Dougherty*, for Appellant.·

*L. H. Woodworth*, and *Campbell & Walton,* for Respondents.

GATES, J. [1]  Action for conversion of $324.74 of plaintiff's deposit in defendant bank by the bank. Plaintiff executed and delivered to one L. B. Larson a promissory note for the sum of $235.85 on November 8, 1910, as payment of the first annual premium on a policy of life insurance. Defendant claimed to have purchased the note on November 9, 1910, in the usual course of business. In December, 1914, the bank charged plaintiff's bank account with the sum of $324.74 and returned the note to him. This action was begun in June, 1915, and, after a second trial, resulted in a judgment for plaintiff. Defendant appeals from an order denying new trial; the purported appeal from the judgment being abortive. Keyes v. Baskerville, 170 N. W. 143.

Lawrence B. Larson was the local agent of the insurance company. Respondent testified that he was pestered into making an application for life insurance by said Larson and the

state agent of the company. He testified that the state agent told him:

"Let me write up the application. I am state agent, and I can use more rope than Lawrence can, and you let me write that up to-day, and I will tell you what I will do: I will write that up, and when that policy comes back, and it don't have everything as I have absolutely stated to you, and in every way and particular, and anything that was in there that was not satisfactory, or in the meantime you make up your mind that you don't want insurance and cannot afford insurance; talk it over with your wife, and when that comes back, if there is anything in there that you don't want, or you can't make up your mind, you don't want insurance, I will take it upon myself as man between man to either return your note, or I will take it up with Lawrence, and have him return it upon your recommendation."

Respondent signed the application for insurance on November 8, 1910, but the application was dated July 7, 1910. He further testified:

"We had considerable conversation before I signed that application and note. There was some talk at that time about dating the policy back. It was explained to me why that should be done. Mr. Walker told me, I believe, it was for the purpose of giving me a cheaper rate on my insurance. That would mean to back date from my last birthday. He told me it would make quite a difference in the premiums of my policy. He told me it would mean a considerable sum to me in the course of the term of the policy. It was a 20-year policy and I so understood it, on the paid-up plan. That was the way it was talked to me. I understood the application was to be dated back to July 7th."

He claimed, however, that he did not understand that the policy was to be dated back. The policy was received by him the latter part of November, 1910, and he immediately wrote the state agents of the company as follows:

"I wrote them that I had received their policy, and that I would not accept it, as it had been dated back to July 7th, and that was not as we agreed upon; that I had given a note to pay for a year's premium from date, that I was paying for insur-

ance I was not getting, and that I would not accept the policy; and I don't know whether I demanded my note at that time or not. I told them I would not accept the policy."

In response to that letter he receiver another, to which he testified that he replied as follows:

"I wrote them again, and told them I had received their letter in regard to the matter of their policy, and that I would not accept the policy; that it was not as our agreement was, and as it was understood between them and me; that I would not accept the policy; that the policy was dated back to July 7th, when it should not have been, and I told them I had already paid for a year in advance, and that I wanted to know whether they send my note back and take up the policy I received, which was about all that was in that second letter."

In response to that he received a further letter, to which he testified that he replied as follows:

"Within a few days, I wrote them again. I told them I had received their letter in regard to the insurance policy; that there is no use of us chewing the rag any longer; what I want to know is whether you will return my note to me or not."

In response to that he received a further letter from the state agents, dated January 25, 1911, which was in part as follows:

"No, Mr. Sterling; I do not intend to return to you your note and take up this receipt. You have gotten exactly what you paid for, and there was no misrepresentation of any kind concerning this policy. You understood it all fully at the time, and got just what you understood the policy would be."

[2] This ended the correspondence. Respondent took no further action during the life of the policy. It will be observed that appellant does not claim that he refused to accept the policy because he had changed his mind about wanting any insurance. His sole objection to the policy was that it had been dated back, and that he was paying for insurance that he did not get. He never returned the policy, nor offered to return it. Up to the time of the receipt of the last letter from the state agents, the attitude of respondent, as disclosed by his oral testimony as to the contents of his letters, was that he would not accept the policy as written; that he either wanted

the policy corrected or his note returned. When he was positively informed that the note would not be returned, he then should have manifested an intention to rescind the agreement. He did not do so. The company by its last letter declared the insurance to be in force. By taking no further steps in the matter, respondent apparently acquiesced in that situation. There is no doubt in our minds but that, if respondent had died prior to July 7, 1911, his representatives would have sought recovery of the insurance, and that the company would have been held liable under the policy. That being the case, he cannot be excused from paying the note for any reason given by him to the state agent. The same principles of law with reference to rescisson of contracts generally apply in this case. Cooley, Briefs on Ins. 2849, 2852.

[3] We have thus far treated the case as though it were an action against the company for the recovery of the premium paid. The question whether appellant was a holder of the note in due course, therefore, becomes utterly immaterial. If the respondent cannot prevail against the company, he certainly cannot prevail against the holder of the note, even though the holder was not a holder in due course.

[4] Respondent further contends that there is no proof that the note was indorsed by the payee, L. B. Larson. Respondent testified:

"Exhibit 6 is the note that I signed at that time. It is in the same condition as it was when I signed it, with the exception of the fact that it now bears the indorsement of L. B. Larson and Walker & Walpole."

The order appealed from is reversed, and the cause is remanded for a new trial.