STATE EX REL. MARTIN S. NELSON AND OTHERS v.
PROBATE COURT OF HENNEPIN COUNTY
AND ANOTHER.[1]

February 26, 1937.

No. 30,990.

[1]Reported in 271 N. W. 879.

298

W. U. *Hauser,* for appellant.

*Fowler, Carlson, Furber & Johnson,* for respondents Martin S. Nelson and Lloyd M. Nelson.

*Paul D. Stratton,* for respondent Albert C. Severson.

JULIUS J. OLSON, JUSTICE.

Appeal from an order of the district court of Hennepin county reversing an order of the probate court because the latter lacked jurisdiction of the subject matter involved and of the persons of respondents.

As a matter of convenience we shall hereafter refer to appellant Nelson as plaintiff and to respondents as defendants.

Plaintiff's husband, Arnold N. Nelson, died testate on October 18, 1931, a resident of Hennepin county. The probate court duly appointed plaintiff to be executrix of decedent's last will on January 22, 1932, she having been designated to be such thereby.

The parties to this cause are related as follows: Defendant Martin S. Nelson is a brother of plaintiff's decedent, and Lloyd M. is a son of Martin; Albert C. Severson is plaintiff's brother-in-law, a practicing lawyer at Canby. There all defendants reside.

By the terms of decedent's will all of his property was given to plaintiff, and to her was awarded the custody and guardianship of the children. She was also authorized thereby to "settle the estate in her own way, and sell any or all of the real or personal estate at public or private sale, as she might think best, and pay the debts without being compelled to account to the probate, or any other court."

Decedent's estate consisted of a homestead inventoried at $6,500, and other real estate $1,011.04, in all $7,511.04. The principal asset respecting personal property consisted of a 5/12 interest in a lumber business carried on at Canby, owned by decedent with the other Nelsons hereinbefore referred to. By reason of Arnold's death this partnership necessarily terminated. As such the remaining partners were charged with the duty of liquidating the same as trustees. Decedent's interest in that property had been appraised in the inventory at $16,057.20. Decedent also owned a 5/16 interest in the Columbia Lumber Company, a domestic corporation. (This was in process of liquidation at the time of making the agreement to which we shall make further reference later.) The other interested owners therein were the defendant Martin S. Nelson and the heirs of one Bernt Nelson, deceased. Martin owned a 6/16 interest in that concern, and the heirs (or the estate) of Bernt Nelson owned the remaining 5/16 interest. Martin had filed a claim against the estate of plaintiff's decedent amounting to nearly $30,000. This claim was filed by him as vice president of the lumber company. The basis for the claim was that the deceased had, during his lifetime, unlawfully abstracted funds from the corporate enterprise in

the amount stated. Evidently the claim was one that had caused considerable discussion between the interested parties. At any rate, the matter was litigated before the probate court. Certain items were eliminated from the claim, but, as finally submitted, the lumber company sought to hold the estate to a liability of nearly $28,000. It was also claimed that decedent had wrongfully appropriated and used material from the lumber company's stock of such merchandise in the erection of his home. There were other charges of fraud and mismanagement. The probate court disallowed the claim. Before the time expired within which an appeal might be taken from that order, the agreement to which we have referred was entered into between plaintiff in her individual capacity, also as executrix of her husband's will, on the one hand, and the Nelsons on the other. The agreement, after reciting the facts substantially as related, then proceeds as follows:

"Now, therefore, for the purpose of amicably settling the above matters in controversy between the parties hereto each of said parties in consideration of the mutual covenants and agreements herein set forth agrees to and with the other as follows:

"1. The said Jennie A. King Nelson, individually and in her capacity as executrix of the estate of Arnold N. Nelson, deceased, agrees to make, execute and deliver to Martin S. Nelson a bill of sale conveying to him all her right, title and interest, individually and as executrix of said estate, in and to the lumber shed building, office building and work shop building, situated on the railroad right of way of the Chicago and Northwestern Railroad Company in Canby, Minnesota, for many years used by Nelson Brothers as their lumberyard, together with all fixtures, machinery and equipment therein contained, which bill of sale, however, shall be subject to the legal rights of the creditors of the former partnership of Martin S. Nelson, Lloyd M. Nelson, and Arnold N. Nelson (now deceased), but with the understanding between the parties hereto that if the creditors permit the other assets of said partnership shall be first applied to the payment of said creditors.

"2. That said Martin S. Nelson will forthwith duly assign and transfer to said Jennie A. King Nelson all his right, title, and interest in said Columbia Lumber Company, a corporation, and will duly assign and transfer all his stock to said Jennie A. King Nelson in said Columbia Lumber Company, a corporation, being all the stock in said corporation except that owned by Arnold N. Nelson, now deceased, and the heirs of Bernt Nelson, deceased.

"3. That said Martin S. Nelson will also—

"Dismiss all proceedings instituted by him as vice president of Columbia Lumber Company, a corporation, in behalf of said corporation, in the matter of the claim of said corporation against the estate of Arnold N. Nelson, decedent, with prejudice; and fully release said estate of Arnold N. Nelson and his heirs, from any and every claim and demand of every kind which he now has, or claims to have, against said estate of Arnold N. Nelson, deceased, on account of any or all transactions had between said Columbia Lumber Company, a corporation, and said Arnold N. Nelson during his lifetime.

"4. Said Jennie A. King Nelson agrees to pay to Martin S. Nelson 3-8ths of whatever sum or sums may be hereafter realized from certain stock of two thousand dollars in the Home Finance Company owned by said Columbia Lumber Company, a corporation, when anything may be realized from the same, and also 3-8ths of whatever sum may be realized from the collection of any notes owned by said Columbia Lumber Company, a corporation, or from any book accounts appearing on the books against customers of said Columbia Lumber Company, a corporation, if any collections are hereafter made on said book accounts.

"5. It is agreed by the parties that in the liquidation of, and winding up, of the affairs of the partnership of Nelson Brothers at Canby, which partnership was composed of said Martin S. Nelson, Lloyd M. Nelson and Arnold N. Nelson, now deceased, that said Jennie A. King Nelson or her attorney A. C. Severson if she appoints him to represent her in said matter, shall have equal authority in the handling, liquidation, collection of assets, and all other

necessary business in the winding up of said partnership, although it is at all times understood that said Arnold N. Nelson, now deceased, owned only 5/12ths interest in said partnership.

"This agreement shall be binding upon the heirs, executors, administrators and assigns of the parties hereto." (Then follow signatures of parties.)

Defendant Severson is not a party to or signatory of the contract.

Plaintiff, claiming that fraud and overreaching had been practiced in its procurement, petitioned the probate court that the contract "be not approved and that same be set aside on the grounds that it was fraudulently obtained, was and is without consideration, was and is an improvident agreement, and was and is the result of a conspiracy on the part of Martin S. Nelson, Lloyd M. Nelson, and Albert C. Severson to give said Martin S. Nelson and Lloyd M. Nelson an unfair advantage over this affiant [plaintiff]; and this affiant asks further that said Martin S. Nelson and Lloyd M. Nelson be required to produce and deliver to this affiant the books, records and statements of account and other necessary data showing the financial condition of said Nelson Brothers as of the 18th day of October, 1931, and subsequent and prior thereto."

The probate court, upon plaintiff's said petition, issued an order to show cause and fixed June 20, 1935, as the date for hearing thereon. The order was directed to all defendants (the two Nelsons and Severson), and they were required thereby to show cause why the mentioned agreement—

"should not be disapproved and set aside on the grounds that it was fraudulently obtained, was and is without consideration, was and is an improvident agreement, was and is the result of a conspiracy on the part of Martin S. Nelson, Lloyd M. Nelson, and Albert C. Severson to give said Martin S. Nelson and Lloyd M. Nelson an unfair advantage over the said Jennie A. King Nelson and was and is an unfair, unsatisfactory, and improper settlement.

"It is further ordered, that at said time and place you produce and deliver the books, records, and statements of account, and other necessary data showing the financial condition of the business of

Nelson Brothers at Canby, Minnesota, as of the 18th day of October, 1931, and all transactions subsequent to said date * * *."

At the appointed time defendants appeared specially, objected to the jurisdiction of the court, moved to vacate and set aside the order to show cause, and asked that the proceedings be dismissed, all because the court lacked jurisdiction of the subject matter and of the parties sought to be reached in that proceeding. The court on September 4 made its order denying the motions but reset the hearing for September 11. On September 10, upon petition of defendants, a writ of *certiorari* was issued out of the district court to review the action taken and proceedings had in this matter by the probate court. Hearing was had February 5, 1936, and on the 24th the court made its order determining that the probate court was without jurisdiction in the premises. It accordingly reversed and set aside the order there for review and remanded the case for further proceedings not inconsistent with the order and decision so made. That is the order for review here.

The only question presented is whether the probate court had jurisdiction to *hear* and *determine the merits of plaintiff's petition.* We have fully stated the facts upon which plaintiff bases her claim for the relief wanted by her.

There can be no doubt that what she seeks is a rescission of the mentioned contract on the ground of fraud. That being so, it is equally clear that the relief sought can be had only by resort to a court having adequate equity power to bring about its annulment. The holding of our prior cases is that annulment of a contract such as this and upon the grounds predicated by plaintiff lies wholly within the power of a court possessed of general equity jurisdiction and as such is wholly beyond the power or jurisdiction of the probate court.

The probate court is vested with constitutional power of full and exclusive "jurisdiction over the estates of deceased persons and persons under guardianship, but no other jurisdiction, except as prescribed by this Constitution." While thus original "jurisdiction of the administration proceeding, and of matters necessarily in-

cident thereto, is exclusive and complete in the probate court," and "in administering the estate it applies equitable principles and exercises equitable powers," it nevertheless possesses *"no independent jurisdiction in equity or at law over controversies between the representatives of the estate, or those claiming under it, with strangers claiming adversely, nor of collateral actions."* (Italics supplied.) Wilson v. Erickson, 147 Minn. 260, 261, 262, 180 N. W. 93, 94. Here, as in the cases just cited, "to get the complete relief asked," strangers to the probate proceedings, "claiming adversely" to the representative, "must be parties to a decree in equity which will bind and protect all." (147 Minn. 262.) To accomplish that result the probate court is clearly impotent because it lacks jurisdiction.

That the constitutional limitation of the jurisdiction of our probate courts necessarily excludes the equity power to rescind contracts between an executor, administrator, or guardian and a third party, otherwise a stranger to the *res,* is the settled rule of our decisions. State ex rel. Lindekugel v. Probate Court, 33 Minn. 94, 22 N. W. 10; Farnham v. Thompson, 34 Minn. 330, 26 N. W. 9, 57 Am. R. 59; Hurley v. Hamilton, 37 Minn. 160, 33 N. W. 912; Mosseau v. Mosseau, 40 Minn. 236, 41 N. W. 977; Peterson v. Baillif, 52 Minn. 386, 54 N. W. 185; Hause v. O'Leary, 136 Minn. 126, 132, 161 N. W. 392; Rux v. Adam, 143 Minn. 35 (see subd. 3 of opinion, pp. 38-39), 172 N. W. 912, 914; Wilson v. Erickson, 147 Minn. 260, 180 N. W. 93; A. L. Goetzmann Co. v. Gazett, 172 Minn. 68, 71, 214 N. W. 895; Barnes v. Verry, 174 Minn. 173, 218 N. W. 551.

In the case of A. L. Goetzmann Co. v. Gazett, 172 Minn. 68, 71, 214 N. W. 895, 896, the court said:

"Controversies between plaintiff and the administrators, arising from transactions between them which originated after Gazett's death, could not be determined by the probate court, were beyond its jurisdiction and would have to be litigated in an action commenced in the district court. * * * Contracts they may make are their contracts. Liabilities incurred are their liabilities, and neither the probate court nor the district court on appeal from that

court has any authority to hold third parties accountable to them, because all such matters lie wholly within the original jurisdiction of the district court." (Citing cases.)

The same rule prevails elsewhere. See 1 Woerner, Am. Law of Administration (3 ed.) § 151, pp. 514-515, where the author states the rule:

"Since the functions of Probate courts are limited, in respect of executors and administrators, to the control of the devolution of property upon the death of its owner, it is not their province to adjudicate upon collateral questions. The right or title of the decedent to property claimed by the executor or administrator against third persons, or by third persons against him, as well as claims of third persons against creditors, heirs, legatees, devisees, or distributees, must, if an adjudication become necessary, be tried in courts of general jurisdiction, unless such jurisdiction be expressly conferred on Probate courts. It follows from this principle, that *Probate courts have no power to investigate the validity of an assignment of the interest of an heir or legatee; the decree of distribution or payment should be to the legal successor of the property, leaving questions of disputed rights between these and claimants against them to be adjudicated in the ordinary courts.* And this is so of the assignments of creditors, of legatees, of distributees, of parties entitled to partition, of the assignment by a widow of her interest in the estate, and of a legacy charged upon another legacy." (Italics supplied.)

The conclusion reached by the district court is obviously right, and its order is affirmed.

Mr. Chief Justice Gallagher and Mr. Justice Peterson, not having been members of the court when this case was argued and submitted, took no part in its consideration or decision.