STATE EX REL. ALMA LARSON v. PROBATE COURT OF
HENNEPIN COUNTY AND OTHERS.[1]

November 18, 1938.

No. 31,816.

1Reported in 283 N. W. 545.

6

*Erland Lind,* for appellant.
*Max Shapiro,* for respondents.

JULIUS J. OLSON, JUSTICE.

This is an appeal by Alma Larson, executrix of the last will and testament of her mother, Jennie A. Larson, deceased, from an order of the district court of Hennepin county quashing a writ of *certiorari* sued out upon her application to review certain proceedings had in the probate court of that county. Hereafter we shall refer to Alma Larson as appellant, and, as the only adverse party in interest is Max Shapiro, we shall refer to him as respondent, the probate judge being only theoretically involved.

Respondent had been engaged by appellant to do some legal work for her in connection with the administration of the mentioned estate. While the proceedings in the probate court were still pending, respondent obtained and still retains $600 of estate funds, which sum he claims the right to retain to apply as part payment of attorney's fees in connection with professional services claimed to have been rendered in the administration of the estate. A dispute having arisen between these parties in respect to his right to retain this fund and the amount and extent of his fees in the matter, respondent, in August, 1937, filed a petition in the probate court wherein he claimed to be entitled to an attorney's fee of $1,300 for professional services rendered, and reimbursement for an additional sum claimed to have been advanced in behalf of the estate. He sought a lien on the assets of the estate for the payment of his services and expenses, and asked that the court adjudge a lien thereon for the payment of such amount as the court should find he was entitled to receive, and directing the executrix to pay such amount out of estate funds. A citation to show cause was issued and served upon appellant. She answered denying respondent's claims, although admitting that some service had been rendered. As new matter he was charged with misconduct and negligence in the performance of his professional work. And there are many other allegations, the nature and extent whereof we need not further recite. Respondent replied putting in issue the new matters pleaded. These issues were later heard by the court, resulting in an order allowing respondent attorney's fees in the amount of $1,100 and the amount claimed by him as reimbursement for money expended. The court ordered appellant "as executrix" to pay respondent the sum so allowed, deducting therefrom the $600 already received by him.

Appellant appealed to the district court from this order, but on respondent's motion that appeal was dismissed, the court being of opinion that the order was not appealable. Later appellant petitioned the probate court to vacate and set aside the order of allowance, taking the position that the court was without jurisdiction to fix and allow attorney's fees where, as here, there was a contest in respect to the amount thereof, and the propriety and value of

respondent's fees and lien claim were the subjects of conflicting claims and interests and as such not within probate jurisdiction. That matter was also duly heard, but the court adhered to its former ruling. To review that order appellant applied to the district court for a writ of *certiorari* to the probate court, the purpose being to reverse the order allowing attorney's fees and disbursements for lack of jurisdiction on the subject matter there involved. The district court upon hearing quashed the writ. The memorandum indicates that the court was of opinion that the question of jurisdiction had been waived inasmuch as appellant had in substance and effect "petitioned the probate court for the allowance of attorney's fees."

The important, and we think determinative, question here is whether the probate court had jurisdiction of this kind of issue. The record is perfectly clear that the parties to this controversy *consented* to determination by that court of their conflicting claims. If consent could confer jurisdiction then plainly their conduct precludes any notion to the contrary.

For appellant it is said and ably argued that the probate court was wholly without jurisdiction "to try or determine any controversial issue" between the representative and his attorney, hence that the proceedings had are a nullity and the order here for review "must be vacated and set aside" on appellant's petition, she being "a party in interest"; and that the relief sought may be granted "at any time, even if the right to take an appeal from it to a higher tribunal or to have it reviewed by a higher tribunal in any manner whatsoever has been barred by the lapse of time or otherwise."

Our constitution, art. 6, § 7, provides that the probate court "shall have jurisdiction over the estates of deceased persons and persons under guardianship." In State ex rel. Nelson v. Probate Court, 199 Minn. 297, 303, 304, 271 N. W. 879, 882, we said:

"While thus original 'jurisdiction of the administration proceeding, and of matters necessarily incident thereto, is exclusive and complete in the probate court,' and 'in administering the estate it applies equitable principles and exercises equitable powers,' it nevertheless possesses *'no independent jurisdiction in equity or at law*

*over controversies between the representatives of the estate, or those claiming under it, with strangers claiming adversely, nor of collateral actions.'"* (Citing cases.)

There the conflict arose because the probate court sought to exercise jurisdiction in a case involving relief sought from an improvidently made contract entered into by the executrix acting as such (and in her individual capacity also) and testator's copartners in business ventures, the basis for the proceeding being founded upon fraud, and that testator's property interests were involved. We held "that the constitutional limitation of the jurisdiction of our probate courts necessarily excludes the equity power to rescind contracts between an executor, administrator, or guardian and a third party, otherwise a stranger to the *res,* is the settled rule of our decisions." (Citing many cases.) Cases from other jurisdictions, speaking generally, hold that probate courts have no jurisdiction "to decree payment to persons employed by the executor or administrator to render services for him, or for the estate, in its administration. Although it may be the duty of the court, in passing upon the administration account, to determine the reasonableness of payment for such services, and allow or reject the credits taken therefor, it has not the power, unless expressly granted by statute, to adjudicate upon the claims of such persons against the administrator; their remedy, if he refuse to pay, is in another court." 1 Woerner, Am. Law of Administration (3 ed.) § 152, and cases under notes 5 and 6. And the author in the same section goes on to say that "while the court may make an allowance to an administrator who performs services for the estate, as an attorney at law, not within the scope of his duties as administrator, * * * it has no jurisdiction to order the payment of counsel fees by the administrator." So, too, debts created after the death of the intestate or testator cannot be proved in probate court, nor can that court adjust the rights or equities arising out of the sale of real estate, or out of a vacation of the sale, between the purchaser and administrator. The same general rule applies in respect of attorney's services. The rule is thus stated in 2 Woerner, Am. Law of Administration (3 ed.) § 356:

"\* \* \*, the estate is not liable to an attorney for his services at the instance of an executor or administrator, but that the latter is himself liable in a suit by the attorney." (Numerous cases are cited by the author sustaining the text.)

■ In the performance of his official duties it is of course important that the executor or administrator secure the advice of competent counsel. There may be much to do requiring the expert services of a competent attorney. For this reason, it has been generally held to be entirely proper that the probate court allow the representative suitable credit for reasonable fees for such services paid by him in good faith. Many states have provisions for such employment and for allowance to the representative of proper credits for such payments. Our statute, 3 Mason Minn. St. 1938 Supp. § 8992-118, provides:

"Every representative shall be allowed his necessary expenses incurred in the execution of his trust, and shall have such compensation for his services and those of his attorneys as the court shall deem just and reasonable; but if a decedent by will makes provision for the compensation of his executor, that shall be taken as his full compensation unless he files a written instrument renouncing all claim for the compensation provided for in the will. At any time during administration, the representative may apply to the court for an allowance upon his compensation and upon attorney's fees."

But the allowance is to the representative as such, not to the attorney. State ex rel. Nordin v. Probate Court, 200 Minn. 167, 273 N. W. 636. This subject is well treated in 3 Woerner, Am. Law of Administration (3 ed.) §§ 515 and 516, and numerous cases from the various jurisdictions may there be found.

The next section deals with attorney's liens (§ 8992-119) and reads as follows:

"When any attorney at law has been retained to appear for any heir, devisee, or legatee, such attorney may perfect his lien upon the client's interest in the estate for compensation for such services as he may have rendered respecting such interest, by serving upon the representative before the decree of distribution is made, a notice

of his intent to claim a lien for his agreed compensation, or the reasonable value of his services, and by filing such notice with proof of service thereof. The amount of such lien shall be determined on the hearing of the petition for partial or final distribution, and any property decreed therein to such heir, devisee, or legatee shall be subject to such lien. The representative shall satisfy such lien out of any property so decreed and by order of the court may sell so much of such property as will satisfy such claim and the expenses of sale."

The problems presented by the quoted sections raise grave constitutional questions. If the probate code is to be so construed as to authorize any attorney having had something to do for an heir, devisee, or legatee to proceed in that court to have determined the amount of his fees and the enforcement of his lien for services; or to do as respondent did here—attempt to compel the representative to pay him attorney's fees and claimed expenses, and to enforce his statutory lien to make his claim effective, there being a genuine dispute as to the amount earned and expended, then the constitutionality of the mentioned sections might well be doubted. For, as we have seen, the constitution only confers upon the probate court "powers to take charge of, preserve, and distribute according to law the property of decedents, but not to determine, as between the representative of the estate and a third person, the right to property claimed by each. The rights of third persons not interested in the distribution of the estate are not included in the jurisdiction." State ex rel. Lindekugel v. Probate Court, 33 Minn. 94, 95, 96, 22 N. W. 10, 11. So the question boils down to this: Does the attorney for the representative occupy a more favorable position than other "third persons not interested in the distribution of the estate?" If respondent had been engaged by appellant to repair a building belonging to the estate, damaged by fire or storm, and if a dispute arose between them in respect to the terms of the contract, or lack of appropriate performance thereunder, and if, as here, respondent sought enforcement of a lien to make his claim good, will anyone contend that such proceeding, in view of our prior decisions, is

cognizable as being within probate jurisdiction? That such services and necessary expenses connected therewith would be proper items in the administration of the estate is apparent. If respondent's theory is correct, he occupies a more favored position because the statute provides suitable allowance to be made to the representative for such services, whereas nothing is said in respect to other claimants who render other and perhaps as much needed services for the representative as such. As a matter of principle we can see no such distinction.

That the relationship of the parties here was that of attorney and client is obvious. That relationship is a personal and confidential one. Such it always has been and such it must be if public confidence in the profession is to be maintained. Therefore it is the personal duty and responsibility of the representative to make his own selection of counsel. The probate court has been given no authority to retain or discharge such attorney. It is easily conceivable that situations might arise from time to time requiring, in the opinion of the representative, a change of attorneys; or securing additional legal assistance if thought necessary by him in deciding important and doubtful questions, such as those relating to inheritance and succession taxes; bringing and defending suits in equity or at law; compromising and settling disputed and doubtful claims, and the like. The field is a wide and almost limitless one. If respondent had been discharged by appellant but the former nevertheless insisted upon retention of his job, could the probate court override the representative's choice? We think not. "The right of a client to discharge his attorney at his election, with or without cause, is universally recognized by the authorities." (Citing cases.) Lawler v. Dunn, 145 Minn. 281, 284, 176 N. W. 989, 990. The court quotes with approval and adopts the view expressed in Martin v. Camp, 219 N. Y. 170, 176, 114 N. E. 46, L. R. A. 1917F, 402. The rule there stated as applicable to compensation in such cases is quoted and reads (145 Minn. 284, 176 N. W. 990):

"The rule secures to the attorney the right to recover the reasonable value of the services which he has rendered [until time of dis-

charge], and is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential."

Respondent cites and heavily relies upon Hazlett v. Estate of Moore, 89 Neb. 372, 131 N. W. 589. The constitutional grant there obtaining with respect to probate jurisdiction contains this significant clause: and "such other jurisdiction as may be given by general law." (Neb. Const. art. 5, § 16.) The court there based its decision permitting the attorney to bring his claim for fees thus [89 Neb. 377]: "The better rule under the constitution and statutes of this state is that an itemized bill therefor [attorney's fees] may be presented to the county court and allowed as a claim against the estate, insofar as the charges are reasonable and just." Obviously that case, in view of our prior decisions, is not of much help. Another case relied upon is that of U. S. F. & G. Co. v. People, 44 Colo. 557, 564, 98 P. 828. There the court was of the view that the distinction in cases from other jurisdictions between claims arising against the decedent based upon what decedent did during his lifetime and expenses of administering the estate were such that it could not "accept the distinction thus made. Whatever may be the ground given for its adoption elsewhere, no room is left for its recognition here. Our statute, § 4780 Mills' Ann. Stats., puts this matter beyond question." So it is apparent that the jurisdiction there is a matter of statutory enactment rather than of constitutional limitation, as here. Another is Carpenter v. U. S. F. & G. Co. 123 Wis. 209, 101 N. W. 404. There statutory authority conferred upon county courts jurisdiction of "all matters relating to the settlement of the estate of such deceased persons." The court was of opinion that the jurisdiction thus granted extended to amounts properly chargeable against decedent's estate for attorney's services rendered for the administrator. There the administrator had defaulted and his surety was called upon to respond. Due notice was given to all parties in interest, including heirs and beneficiaries. The administrator in rendering his account had claimed credit for certain attorney's fees and expenses incurred by them but which

he had failed and neglected to pay. The propriety of these charges was not questioned; in fact the [123 Wis. 211] "heirs consented to the entry of the order." That suit was brought by Carpenter as [101 N. W. 405] "judge of the county court of Milwaukee county" against the surety "on an administrator's bond." It was tried in and determined by the circuit court, a court of general jurisdiction. The foundation for the suit as against the surety was "that if the said Kuehn [administrator] performed all orders and judgments of said county court it should be void, and otherwise that it should remain in full force and virtue." When he rendered the account of "his administration" credit was claimed for compensation and expenses paid to his attorneys amounting to $5,773.49. But he had made no such payment, nor any payment at all. The county court made its order settling the account, and "the sum of $14,778.69 was decreed to be due from the administrator, and he was ordered to pay therefrom the sums allowed to the attorneys as aforesaid, and the balance to the heirs entitled thereto, specifying the amount going to each." The heirs consented. There was no appeal from that decree. Demand was duly made upon the administrator to comply. He refused. Demand was then made upon defendant surety, and it' too refused to comply. This suit was then brought "for the benefit of the parties entitled" to this fund. The surety paid all thereof except the fees and expenses of attorneys which had been found just and proper and ordered this sum paid to them. The issue raised by the surety was the binding effect of the order insofar as same related to these items. It is therefore plain that all the county court did was to settle the administrator's account. On appeal liability was affirmed, and the jurisdiction of the county court so to settle the account sustained. It is difficult—nay impossible—to find fault with that result. Under our procedure the same result would necessarily follow. That our probate court has the power to settle and allow accounts of this kind admits of no debate. But, as we have seen, in this state there is a long established line of cases holding constitutional authority within definite limits. We must not permit ourselves to "be misled as to the juris-

diction" of our probate courts "by authorities found elsewhere under a different system than ours." (123 Wis. 213, 101 N. W. 406.)

We think respondent has overlooked the last portion of art. 6, § 7, and we italicize the same for the sake of emphasis. "A probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship, *but no other jurisdiction,* except as prescribed by this Constitution." We repeat, the probate court does not have "independent jurisdiction in equity or at law over controversies between the representatives of the estate, or those claiming under it, with strangers claiming adversely, nor of collateral actions." Wilson v. Erickson, 147 Minn. 260, 261, 180 N. W. 93. That is the exact situation respondent is in. He is "a stranger to the *res.*" In State ex rel. Nelson v. Probate Court, *supra* [199 Minn. 304], we cited the cases sustaining this view. There is no need of again citing them. They are available. In all of them it will be found that to sustain probate jurisdiction the estate (*i. e.,* the *res*) was in some fashion claimed to be involved by the one who fought to sustain the jurisdiction of the probate court.

Nor are we persuaded that because an attorney is an officer of the court and as such "subject to the disciplinary authority of the court, and to its orders and directions in respect to their relations to the court as well as to their clients" (Charest v. Bishop, 137 Minn. 102, 105, 162 N. W. 1063, 1064) that therefore he occupies a superior position to others rendering services or providing merchandise to maintain the estate. The statute does not so provide, and we should not read into it what is not there.

Equally untenable is the argument that a representative may be placed in a position where if he has paid his attorney the amount fixed by the probate court he may yet be sued in the district court for a claimed balance. The representative can easily provide against such contingency by appropriate agreement with his counsel. He is in no worse position than he would be if the cause were his own in fact instead of acting in a representative capacity. If in his private business he employs counsel and a dispute arises in respect to fees charged he may have the issue determined in a court of general jurisdiction. The parties here, as to remedy, stand in

exactly the same situation as do other litigants. That is why the same remedy and the same procedure should be followed. Instead of delaying the settlement of estates by this procedure the likelihood is entirely the other way. Where a conflict of this type arises a court of general jurisdiction will in most cases be the forum in which the controversy is finally determined.

It has been suggested that the probate court should be construed to have this power because it would simplify proceedings and probably save expense. We are referred to receivership proceedings and the like as illustrative of such advantages. Granting all that is claimed in this behalf, it must be remembered that receivership and other similar proceedings are had in courts of general jurisdiction; hence the question of constitutional limitation as to jurisdiction does not enter into the picture. No one would contend that the probate court could, even if the parties consented, exercise jurisdiction in a cause where the relief sought was a receivership or other similar relief. The fact that the estate, the *res*, was under its jurisdiction to the extent of a controlling interest therein could not enlarge its jurisdiction. Our prior cases negate any such notion.

It is suggested that Kelly v. Kelly, 72 Minn. 19, 74 N. W. 899, and In re Guardianship of Kaplan, 187 Minn. 514, 246 N. W. 5, constitute guides to decision and furnish authority for the jurisdiction here claimed by the probate court. We think the claim is unfounded. As long ago as Jacobs v. Fouse, 23 Minn. 51, this court held that the word "estates" appearing in the constitutional grant "is used only with reference to deceased persons, so that the proper reading of the constitutional provision is that a probate court shall have jurisdiction over the estates of deceased persons, and over persons under guardianship, etc. The jurisdiction over persons under guardianship embraces jurisdiction over their affairs in general, including the management and disposition of their property."

The cases *pro* and *con* are found in 2 Woerner, Am. Law of Administration (3 ed.) § 356. In Ness v. Wood, 42 Minn. 427, 429, 44 N. W. 313, 314, this court said:

"The general rule is well established that an executor or administrator cannot bind the estate he represents by any *new* con-

tract he may make for it. It is held that if he borrows money for the purposes of the estate, and devotes it to the payment of debts due, or if he contracts for services which are actually rendered, valuable and important to the estate, or if he executes a deed in his representative capacity, containing covenants which fail, he is individually liable, and judgment must be against him personally. The estate is not bound."

And to the same effect is Winston v. Young, 52 Minn. 1, 5, 53 N. W. 1015:

"Debts to be allowed and paid out of the estate of a deceased person must be such as were incurred, or such as arise on obligations entered into, by him. Any claim arising from payment of money, at the request of the executor, to relieve any part of the estate from an incumbrance upon it, is not such a debt. If there be any remedy against the estate to the party for the money so paid,— and we do not say whether there is or not,—it must be worked out through the executor as for an expense of administration."

■ Upon principle and authority, we hold that when, as here, there is conflict between the representative and his attorney, the issues presented thereby should be determined by a court of general jurisdiction and not by the probate court. Fact issues might in many cases be triable to a jury as a matter of right. The probate court has no means of providing such. The right to jury trials is a valuable one and is guaranteed by our constitution. Art. 1, § 4.

■ The probate court being without authority to determine the issues here involved, it necessarily follows that its order in the premises is of no validity. "Parties cannot confer jurisdiction by consent upon a court of any subject-matter, which is denied to it by law; * * *" Chandler v. Kent, 8 Minn. 479, 483 (536); In re Estate of Borlaug, 201 Minn. 407, 411, 412, 276 N. W. 732; In re Estate of Peterson, 202 Minn. 31, 277 N. W. 529; Gjerstadengen v. G. W. Van Duzen & Co. 7 N. D. 612, 76 N. W. 233, 66 A. S. R. 679.

The order is reversed and cause remanded for further proceedings in harmony with the views herein expressed.

STONE, JUSTICE (dissenting).

It is a premise, both illuminating and inescapable, that in solving questions of jurisdiction as between probate and district courts "the law is concerned not so much with working out an abstract and ideal harmony with respect to the limits of this dual jurisdiction as it is with the efficient administration of practical justice thereby." Brown v. Strom, 113 Minn. 1, 5, 129 N. W. 136, 137.

Next, we are dealing with attorneys and their compensation. Attorneys, as officers of the court, are subject to its "orders and directions in respect to their relations to the court as well as to their clients." Charest v. Bishop, 137 Minn. 102, 105, 162 N. W. 1063, 1064. An order fixing their compensation, made after due hearing, in which the attorney participates in his own behalf, is a judgment rendering the issue *res judicata*. Truesdale v. Farmers' L. & T. Co. 67 Minn. 454, 70 N. W. 568, 64 A. S. R. 430. An attorney to a case is a "stranger" to it only in the sense that in the ordinary case he litigates nothing on his own behalf. The moment he comes in to try for himself an issue as to his compensation, he becomes a party. State ex rel. Nordin v. Probate Court, 200 Minn. 167, 273 N. W. 636.

Historically and essentially, negation of the probate court's possession of equitable jurisdiction is wholly untrue. Originally, everything any court did in respect to what is now probate law was done by courts of equity. State ex rel. Martin v. Ueland, 30 Minn. 277, 280, 15 N. W. 245. "Much of the jurisdiction of the old court of equity, and some of the jurisdiction of the courts of common law" in the field of probate law, "has been transferred to the probate court." McNamara v. Casserly, 61 Minn. 335, 342, 63 N. W. 880, 883.

The former jurisdiction of courts of law and equity, exercised through actions *in personam*, was inadequate to complete administration. Therefore "the legislature deemed it proper that the whole world should be bound by the administration proceedings, and to accomplish this provided a proceeding in rem. This proceeding is not according to the course of the common law, and is not a mere substitute for any proceeding known to the common law  *  *  *

its scope and purpose are wholly different." McNamara v. Casserly, *supra,* at p. 343.

Our probate court is one of record and, in its domain, of superior and general jurisdiction. Davis v. Hudson, 29 Minn. 27, 11 N. W. 136; In re Will of Mousseau, 30 Minn. 202, 14 N. W. 887. When properly invoked, it "attaches to the particular estate for the purpose * * * of supervising, directing, and controlling its administration and settlement according to law." Culver v. Hardenbergh, 37 Minn. 225, 234, 33 N. W. 792, 797. In other words, both constitution and statute contemplate that the job of administration, with all its necessary incidents, be fully performed in the probate court. State ex rel. Nelson v. Probate Court, 199 Minn. 297, 271 N. W. 879.

That cannot be done, the task cannot be finished, the estate cannot be distributed, until the expenses of administration are first ascertained and paid by the representative. Is it not then plain that fixing attorney's fees by judicial action in the probate court is within its jurisdiction? That jurisdiction "continues over the administration, as one proceeding, until its close; * * * all the court may do in the course and for the purpose of administration * * * is sustained" by the jurisdiction acquired at the outset. Culver v. Hardenbergh, *supra.* Accordingly, in Kelly v. Kelly, 72 Minn. 19, 74 N. W. 899, it was held that the probate court had jurisdiction to allow and order paid out of the estate of an insane person the witness and attorney fees incurred upon a hearing on the petition of the insane person to be restored to capacity.

Kelly v. Kelly was followed in In re Guardianship of Kaplan, 187 Minn. 514, 517, 246 N. W. 5, wherein the power of the probate court "so to authorize" is stressed. "Being necessary for the protection of the ward's legal rights," said Mr. Justice Olsen, "it must be held that these expenditures stand on the same footing as expenses for necessary food, clothing, and other requirements for the ward." Upon like reasoning this court held, in State ex rel. Gage v. Probate Court, 112 Minn. 279, 287, 128 N. W. 18, that the duty to determine inheritance taxes was properly imposed by statute upon the probate court as an incident of administration. It was considered beyond doubt that "such jurisdiction includes every mat-

ter necessarily connected with the administration of estates, as well as the conduct and duties of executors and administrators." Are or are not these cases overruled?

May I inquire why, if the district court may, in a proceeding *in rem*, fix attorney's fees, the same power should be denied to the probate court in a proceeding *in rem* of which it has exclusive jurisdiction? In a proceeding involving a trust in the district court no one would question that court's power to fix the fees of an attorney, as in Watkins v. Bigelow, 96 Minn. 53, 104 N. W. 683. The same practice applies in receivership proceedings. That analogy controlled decision in Carpenter v. U. S. F. & G. Co. 123 Wis. 209, 101 N. W. 404.

In Wisconsin the powers of the county courts in probate matters are fixed by a statute extending jurisdiction "to all matters relating to the settlement of the estate of such deceased persons." (Our probate court has *all* that power.) In consequence, the court concluded [123 Wis. 214, 101 N. W. 406]:

"That broad general power necessarily carries with it by implication all judicial authority of courts of equity in the administration of trusts necessary to the proper administration of the particular class of trusts in question * * * 'The county courts have plenary jurisdiction in all matters of the administration * * * and much of this jurisdiction is of an equitable character and is necessarily concurrent with that of courts of equity.' "

The court said further [123 Wis. 214, 215, 101 N. W. 406, 407]:

"By reference to the authorities in respect to the power of courts of equity dealing with judicial trustees generally, we may easily determine the measure of the authority of our county courts in dealing with the questions under consideration. We apprehend that time need not be spent demonstrating that a trustee in a judicial administration in equity may not only be permitted to pay out of the trust fund any legitimate expense incurred in the conservation thereof, but may be, when necessary to the ends of justice, required to do so, and when so justly required that the adjudged expense may be made by order of the court a lien upon such fund * * *.

True, the attorney in such a case has no lien thereon until the court gives him aid in the matter. His claim is purely personal to the trustee. The rule in that regard is not peculiar to the class of trusts we have here. It is a general rule applicable to all trusts. Every attorney who performs beneficial services to a trust, directly or in effect enriching the trust fund, when it is necessary for his protection, is equitably entitled to obtain a lien upon the trust fund. The court has ample authority to recognize and give effect thereto. * * * Central R. & B. Co. v. Pettus, 113 U. S. 116, 124, 5 Sup. Ct. 387, 28 L. ed. 915. Justice Harlan in that case said: 'When an allowance to the complainant is proper on account of solicitors' fees, it may be made direct to the solicitors themselves, without any application by their immediate client.' See, also, Trustees v. Greenough, 105 U. S. 527, 26 L. ed. 1157; Schmidt v. Oregon G. M. Co. 28 Oreg. 9, 40 Pac. 406 [1014, 52 A. S. R. 759]; Laroque v. Candolle, 4 Md. Ch. 347. The cases where such claims have been ordered paid out of the trust fund as trustee's expense are numerous."

On such reasoning and such authority did the Wisconsin court hold that its county courts, in the exercise of a probate jurisdiction corresponding to ours at all points, have the power to make an allowance for attorney's fees. Not only that, it considered that allowance, made in the administration proceeding, *res judicata,* and so binding on the surety of the administrator.

Mr. Justice Olson's thought is that the probate court does not have the power in any case to fix the fees of the administrator's attorney, because it is lacking in the equitable jurisdiction considered necessary to that end. That view, I submit most deferentially, ignores the very factor determinative of the whole issue. That factor is the possession by the court of every power, every item of jurisdiction, legal or equitable, necessary to complete performance of the task of administration.

Its power to divide an insolvent estate between creditors admitted, it must follow that the probate court has every power needed to ascertain how much remains for division. It must then determine

and provide for payment of all expenses of administration, including attorney's fees.

So also, creditors nonexistent or all paid, must the probate court distribute what is left. But in all cases it must first ascertain how much there is to distribute. That cannot be done without first determining and providing for payment of the expenses of administration. Therefore the court must and does possess the judicial power to determine, that is, to fix with finality (subject to review) the amount of such expenses, including attorney's fees.

Many of the cases cited by 2 Woerner, Am. Law of Administration (3 ed.) pp. 1181-1187, hold that probate courts have the very jurisdiction now denied. Mr. Justice Olson attempts to distinguish such cases by saying, in effect, that the courts involved, for example the county courts of Wisconsin and Nebraska (see Carpenter v. U. S. F. & G. Co. *supra;* Hazlett v. Estate of Moore, 89 Neb. 372, 131 N. W. 589), are courts of general jurisdiction, or at least of broader jurisdiction than that of our probate court. My answer is that our probate court has, under our constitution and statutes, precisely the jurisdiction held to exist in such cases, that is, a complete jurisdiction for the task assigned to it by law.

As usual, it is impossible to run a continuous boundary to mark off, all the way, the field of one court from that of another. There are zones where jurisdiction is concurrent and so left to regulation by statute. "What shall be done in the course and for the purpose of administering such estates is to some extent in the power of the legislature to prescribe. It may provide for some things which, though not necessary to administration, are appropriate to it." Mousseau v. Mousseau, 40 Minn. 236, 238, 41 N. W. 977, 978. That explains our legislative scheme whereby contract claims against the deceased are proved and enforced in the probate court, whereas claims in tort remain for enforcement in the district court. Comstock v. Matthews, 55 Minn. 111, 56 N. W. 583.

In the Mousseau case the court went on to say that: "other things are clearly foreign to administration, and jurisdiction over them cannot be conferred on the probate courts by the statute." In the latter category, I take it, are cases for specific performance,

Mousseau v. Mousseau, *supra,* and rescission, State ex rel. Nelson v. Probate Court, 199 Minn. 297, 271 N. W. 879.

There we have a perfectly conventional situation where a second court must act before a first can pronounce judgment in a matter pending before it. For example, receivers, trustees of court controlled trusts, as well as executors and administrators, frequently must resort to ordinary litigation at law or in equity, or are forced into it by others, in matters which affect their fiduciary functions. But to me it seems anomalous and indefensible to put into that category an issue necessarily incident to the administration itself. Appraisers' fees in large estates run into substantial sums. The appraisers are certainly not as much officers of the court as attorneys. I take it no one would suggest that the court appointing them could not fix the fees of appraisers. Precisely the same elements of logic and practical administration support the fixing of attorney's fees.

It is, I submit, quite irrelevant to suggest possible unconstitutional denial of trial by jury if the probate court is held to have this jurisdiction, now questioned for the first time in our history and twice before affirmed by this court. Attorneys, in respect to the summary power of the court over them, have not and never did have any right to jury trial. We are dealing, also, with issues which at the time our constitution was adopted were of an equitable and probate nature, and so without the right to jury trial in any party. Finally, the field of consideration lies within the scope of a completely new proceeding *in rem,* a proceeding unknown to the common law, and so without right to jury trial in anyone interested in the proceeding as such. Here again are not to be included issues so far foreign to administration as to require solution by independent action at law or in equity. Many such cases, brought by or against administrators, executors, receivers, and ordinary trustees, will carry the right of jury trial to one or both of the litigants.

Fixing attorney's fees in a matter of this kind may decide no issue *in personam* except as it binds those who have notice or actually

litigate the question. 3 Freeman, Judgments (5 ed.) p. 3134. All such a decision does, in a proceeding *in rem,* is to determine how much the attorney is to get out of the *res,* and of that *res,* I repeat, the probate court has exclusive jurisdiction in an administration proceeding. That power is not denied to the district court in a similar case *in rem.* Upon what ground may it be denied to the probate court, which has complete powers for administration *in rem?*

To illustrate—a cause of action for wrongful death is given to the representative simply as "a matter of convenience." It might as well have been given to any other "in trust for the widow and next of kin." Aho v. Republic I. & S. Co. 104 Minn. 322, 326, 116 N. W. 590, 592. Of such an action and its proceeds the district court, and not the probate court, has jurisdiction for complete administration. In State ex rel. Scannell v. District Court, 114 Minn. 364, 131 N. W. 381, we dealt with an order for distribution of the proceeds of such an action which reduced the fee of the attorney, who was also the special administrator. Disappointed, he disobeyed the order, and we sustain his conviction for contempt. It is no answer to that convincing analogy to say, as the truth is, that the district court is one of general jurisdiction. The jurisdiction of the district court, in actions of wrongful death, is for the purpose of administering and distributing a fund. So also, and precisely the same and just as general and complete, is that of the probate court as to estates of deceased persons.

In the Scannell case [114 Minn. 366] the relator was punished as "an officer of the court * * * subject to punishment" for his contempt in disobeying "the order to pay over the money." The probate court may also punish for contempt. 2 Mason Minn. St. 1927, § 8701. But, if this decision is right, and the probate court has no jurisdiction to decide anything at all concerning attorney's fees, it cannot punish a representative for refusal to pay an attorney what has been allowed. Nor can the court punish the attorney for withholding funds of the estate, if he has them, in a larger sum than the allowance. Disobedience of an order void for want of jurisdiction is not contempt.

We are not now interested in any question as to personal liability of the representative. It is enough that the probate court may adjudge the liability of the *res* which is within its jurisdiction.

If there is no jurisdiction, whatever the court does in respect to attorney's fees and other similar expenses of administration is a nullity, no matter what anyone says to the contrary. A mere credit to the representative is no protection either to him or to the attorney. One may refuse to pay what has been allowed. The other may sue for more. Or the representative may pay, and an heir, at any time within the period of limitations, may sue either or both to recover an alleged overpayment. To aver otherwise, to assert that anyone is bound for any purpose, is to admit judicial effect, that is, jurisdiction, for that which does the binding.

The holding of no jurisdiction, I submit, thwarts the undenied and progressive intention of constitution and statute that the probate court shall finish the job of administration assigned to it. It invites a multiplicity of litigation (Hazlett v. Estate of Moore, 89 Neb. 372, 131 N. W. 589), which our law purposely seeks to avoid. By so much this decision seems to me to turn back procedural progress by not less than two-thirds of a century.

Any recrudescence of juridical atavism which is both avoidable and regrettable is abhorrent to all of us—as much so to my brethren of the majority as anyone. I have but tried to blaze a trail of law and reason which would lead us forward rather than backward. Why it should not be followed is, for the reasons herein stated (with all but complete futility), simply beyond me.

GALLAGHER, CHIEF JUSTICE (dissenting).

I agree with the views expressed by Mr. Justice Stone.

MR. JUSTICE HILTON took no part in the consideration or decision of this case.