## MARQUETTE NATIONAL BANK OF MINNEAPOLIS v. KATHERINE A. MULLIN AND ANOTHER.[1]

July 7, 1939.

No. 32,078.

[1]Reported in 287 N. W. 233.

*Jesse Van Valkenburg, Horace Van Valkenburg,* and *Warren E. Blaisdell,* for appellant.

*George H. Smith* and *Victor J. Larson,* for Katherine A. Mullin, respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order sustaining defendant Mullin's amended demurrer to its complaint.

The following facts are alleged in the complaint as amplified by further facts stipulated by counsel and approved by the court as within the cause: On January 30, 1929, one Henry J. Mullin borrowed $600 from plaintiff and executed a note due 60 days thereafter with interest at seven per cent. As security for its payment he also executed and delivered an assignment of all his "right, title, and interest as residuary legatee to the extent of" the amount of the note and interest to accumulate thereon "in and to the estate of Mary C. Ristine, deceased." By the assignment he also constituted and appointed plaintiff his attorney with full power "to take all legal, or equitable measures" for the recovery of the assigned

property to the extent of the obligation secured thereby. As the Ristine estate was then pending in the probate court of Hennepin county, plaintiff on February 1, 1929, filed the assignment in that court. Since then the representative has given plaintiff due notice of all proceedings therein had.

The note was not paid; consequently a renewal thereof was given April 15, 1929, due on demand, for the same amount, and at the same rate of interest as the former note. That is the note presently involved. The note recites the prior assignment of the maker's interest in the Ristine estate and gives to the bank "authority to collect at any time any part" of the securities theretofore pledged. "The word 'securities' is intended to include all the pledged property." Mullin died testate June 26 following, and defendant Katherine A. Mullin, his surviving wife, was duly appointed executrix and is still acting in that capacity. Later, and in due course, plaintiff filed in the probate court having in hand the administration of Mullin's estate its statement and proof of claim for the amount represented by its note with accumulated interest. It was there allowed on April 9, 1930. The Mullin estate "is wholly insolvent except for the interest of said Henry J. Mullin in the estate of Mary C. Ristine and has no other assets."

On October 31, 1938, the probate court entered its final decree of distribution in the Ristine estate and therein and thereby found and determined: "That the residue of the estate of said decedent remaining in the hands of said representative consists of cash in the amount of" $2,896.92; "that the said Henry J. Mullin is entitled to receive" $965.64, that being one-third thereof. Plaintiff demanded this sum from the representative but same was refused. This action promptly followed. Later, the representative, upon order of the district court, deposited the Mullin portion of the estate with the clerk of that court to abide the result of this suit. The representative later was discharged by the probate court from further duties or liabilities in respect to the Ristine estate. So defendant Katherine, as representative of her husband's estate, was the only remaining defendant. She demurred to the complaint on three grounds: (1) That the district court was without jurisdiction of

the action; (2) that the complaint fails to state a cause of action; and (3) that she in her individual capacity as the widow of Henry should have been joined in that capacity as a party defendant, hence that there is defect of parties defendant.

For the purpose of determining the merits as raised by the demurrer, counsel agreed (and the court approved thereof) that the files and records in the Ristine estate should be considered. The instruments deemed essential thereto are included in the printed record.

Unfortunately, the court made only its general order sustaining the demurrer; so we are left in utter darkness as to its reasons for so doing or as to whether the court deemed all grounds, or any one of them, validly taken. This leaves the field of our inquiry and decision a rather wide and open one. That counsel so view it is apparent from the wide range sought to be covered in their briefs.

■ First to be considered is whether plaintiff's cause lies within the jurisdiction of the district court. In determining that question one always must have in mind that under Minn. Const. art. 6, § 5, that court is vested with "original jurisdiction in all civil cases, both in law and equity, where the amount in controversy exceeds one hundred dollars."

This suit is one to gain possession of money the ownership of which, as the case now stands, is the only issue that lies between the parties. The Ristine estate is out of the picture, as we have seen. So unless the probate court by reason of its conceded exclusive jurisdiction of the administration of the Mullin estate prevents the district court from the exercise of jurisdiction, its power to act is beyond controversy.

Our cases hold that the constitution only confers upon the probate court "powers to take charge of, preserve, and distribute according to law the property of decedents, but not to determine, as between the representative of the estate and a third person, the right to property claimed by each. The rights of third persons not interested in the distribution of the estate are not included in the jurisdiction." State ex rel. Lindekugel v. Probate Court, 33 Minn. 94,

95, 96, 22 N. W. 10, 11. Amongst the latest of our cases bearing upon this phase may be mentioned State ex rel. Nelson v. Probate Court, 199 Minn. 297, 303, 304, 271 N. W. 879, 882, and State ex rel. Larson v. Probate Court, 204 Minn. 5, 283 N. W. 545, in both of which prior cases are cited; 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3658, and 5 *Id.* § 7779. In other words, the probate court (204 Minn. 8, 283 N. W. 547) "possesses 'no independent jurisdiction in equity or at law over controversies between the representatives of the estate, or those claiming under it, with strangers claiming adversely, nor of collateral actions.' "

It is apparent that this action is not one to collect the note given by Mullin. That matter was disposed of by the allowance of it as a claim in that estate. Rather, the suit is brought to enforce against the fund mentioned a specific claim to the money here involved by virtue of the assignment mentioned. As such, plaintiff claims adversely to the estate, and the issue necessarily is one between plaintiff and defendant in her representative capacity, she representing the estate. The cases sustaining the mentioned views may be found in 5 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 7770, 7776, and 7779. Helpful on this phase is Shevlin-Carpenter Lbr. Co. v. Taylor, 124 Minn. 132, 144 N. W. 472, 473. There the suit was brought to enforce a mechanic's lien. The debt had been incurred by Ledy, a contractor, who had entered into a contract with defendant Taylor for the construction of a dwelling house. Ledy had purchased from plaintiff lumber and millwork of the value of more than $1,500 to be used on this job. Ledy died before plaintiff's lien was filed, and no claim was filed against his estate in probate court. Taylor claimed that as between the lien claimant (plaintiff) and the contractor it was necessary to foreclosure of the lien that the contractor be made a party; that no claims having been filed against the contractor's estate in the probate court that essential item of proof was lacking. The court in passing upon Taylor's contentions on this phase said [124 Minn. 135]:

"The sole purpose of the rule is the protection of the owner of the property, and to guard against a possible excessive claim by

some subcontractor or materialman. We think that protection is given in this case. And though, as urged by counsel for defendant, an administrator cannot be sued to recover upon a claim against the estate he represents until the same has been presented to and passed upon by the probate court, he was in fact made a party to this action and thus afforded an opportunity to protect the estate, and is bound by the judgment rendered against him. It is true that no personal judgment could be rendered against him; none was asked for; yet the action to foreclose was rightfully brought, * * *."

Here plaintiff has established its claim against the estate by filing and securing an allowance of it by the probate court. This suit is to enforce the lien claim, the security, furnished by the assignment given by Mullin during his lifetime. Secured claims may properly be presented to and allowed by the probate court, but it is not necessary that this be done to preserve the lien, and the right to resort to the property covered by it. It is necessary, however, for the lien claimant before he can share in the general assets of the estate first to exhaust his security or that he release or surrender it. 3 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 3593o, 3593p, and cases cited under notes. We think the district court has jurisdiction. Obviously the probate court could not grant the relief sought since, as we have seen, it lacks jurisdiction in matters of this nature.

■ Defendant's next claim is that the complaint fails to state a cause of action and assigns as reasons therefor:

(1) "The entire case of the plaintiff rests upon its claim that the real estate [in the Ristine estate] had become personal property by reason of the doctrine of equitable conversion, which theory is not tenable by reason of the absolute character of the devise of one-third of the real estate to Mullin. The devise of one-third of the real estate to Mullin gave him the largest possible estate, a fee simple, with the absolute right of alienating the same, and no later provision in the will could limit or qualify this absolute devise"; and (2) that if the involved property is treated as personal "the

assignment given as security was a chattel mortgage, and [as such] this action is barred by the statute of limitations."

It is at least doubtful that the will devised any real estate *as such* to Mullin. The will provides, first, for payment of all indebtedness of testatrix, including expenses of last illness and funeral. She next gave to her sister her "household goods, rugs, jewelry, and all other articles of use and ornament" about her person and home, at the time of her decease. The third paragraph, the one upon which defendant relies, reads:

"I then give, devise and bequeath to my nephew, Henry J. Mullin of Duluth, Minnesota, one-third (1/3) *of the residue of my entire estate, of every nature, real personal and mixed,* whether now owned by me or hereafter acquired, the same to become his absolute property and if he be not then living, this one-third (1/3) shall revert to my estate." (Italics supplied.)

By paragraphs four to ten, inclusive, she gave and bequeathed cash legacies aggregating $13,000. In the eleventh paragraph, "all of the rest, residue and remainder of my estate, real personal and mixed, whether now owned by me or hereafter acquired, and wheresoever situate" she gave to her sister, Bella R. Wyman. By the twelfth paragraph she appointed her brother-in-law executor "with full power to sell, convey and lease any real estate of which I may die seized * * *." Then follows, in the same paragraph, this direction:

*"I direct my executor to convert my entire estate into cash as soon as possible in order that the legacies aforesaid may be fully paid."* (Italics supplied.)

The will was made January 17, 1925. On August 18, 1927, she made a codicil amending the twelfth paragraph so as to provide that her sister, Bella R. Wyman, and her brother-in-law, formerly sole executor, should be the executors of her will. She granted unto them—

"full power to sell, convey and lease any real estate of which I may die seized and to sell and transfer any personal property belonging

to my estate. *I direct my executors to convert my entire estate into cash as soon as possible after my decease."* (Italics supplied.)

Testatrix died December 30, 1927. In due course an inventory and appraisal were made and filed. The only real estate left by decedent was appraised at $10,000. It was subject to a mortgage of $2,000. Her wearing apparel, ornaments, etc. were appraised at $640. Mortgages, bonds, notes, and other evidences of debt were appraised at $7,000. All other personal property was appraised at $1,328.96, so the total value of her estate as inventoried was only $18,968.96. It is therefore obvious that her real estate would have to be resorted to if the cash legacies were to be met. Just as clearly the intent and purpose of giving to her executors not only power but direction to sell must be considered in determining what testatrix intended to accomplish. To be noted also in support of that view is that in the very paragraph upon which defendant so strongly relies she only gave Mullin one-third "of the residue of my entire estate." If testatrix knew and understood the language chosen, and we have no reason to doubt it, the general purpose seems perfectly clear, *i. e.,* to convert her entire estate into cash as soon as possible after her death to the end that the general objectives of her entire will might be brought to fruition.

Of course the probate court was not only authorized but required in issuing its decree of distribution to interpret the provisions of the will. As we have seen, that court in its decree found that the "residue of the estate of said decedent" amounted to only $2,896.92. In accordance with the will, Bella R. Wyman had been given her father's portrait, household goods, rugs, jewelry, and all other articles of use and ornament about decedent's person and home at the time of her decease. And, so the court continues, "she then gave, devised and bequeathed unto her nephew, Henry J. Mullin, one-third (1/3) of the residue of her entire estate, if he survived her." The court considered and duly listed all the cash legacies provided for by the will and determined that as to the property given the sister, same having been delivered to her pursuant to order of the court made May 6, 1929, said order had become final

as of that date; that in respect to the property going to her nephew, Mullin, one-third of the mentioned "residue" should go to him; that the remaining "residue," being $1,931.28, "should be divided pro rata among the legatees of pecuniary legacies in the following proportions," listing the amount going to each. That decree necessarily must stand as *res judicata* for with that court rested the exclusive original jurisdiction of the estate and the interpretation of the will insofar at least as was necessary to determine the division of the property. It was possessed of the power exercised, and its decree in the premises must stand.

"The effect of a decree of distribution is to transfer the title to personalty and the right of possession of the realty from the representative to the legatees, devisees or heirs. The property ceases to be the estate of the decedent and becomes the individual property of the distributees, with full right of control and possession, and right to recover it from the representative by action in the district court if he refuses to deliver it.   *   *   *   A decree assigning to a devisee property devised establishes the validity of the devise conclusively as against all persons interested in the estate. It establishes the right to the property assigned of the person to whom it is assigned, the same as would the judgment of any other court of competent jurisdiction; and if assigned to a devisee in trust, it establishes the validity of the trust. The effect of a decree of distribution upon realty is to discharge it from the administration. Until then it is an asset of the estate and liable to be applied, in default of sufficient personalty, to the payment of debts and charges of administration, whether it remains in the hands of the heir or devisee, or has been conveyed by him to another. A purchaser from an heir or devisee takes subject to this liability. If the court has jurisdiction the final decree of distribution, unless reversed on appeal or set aside on motion, is conclusive on all persons interested in the estate, whether under disability or not, or whether in being or not. Administration proceedings are in rem, acting directly on the res, which is the estate of the decedent. The decree is in rem and binds all persons interested in the estate, not only as to its legal consequences, but

also as to the facts upon which it is based. It is conclusive not only as to the persons entitled to the estate and their shares, but also as to the nature and extent of their title, including the terms, conditions and charges thereof, at least if such title, terms, conditions and charges are actually determined. It is so conclusive upon heirs, devisees, legatees, creditors of the decedent, the representative and his sureties." 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3660, and cases cited in notes; 5 *Id.* § 7778, and cases under notes 23 and 24.

■ Much space in counsels' brief is devoted to a discussion of the question of whether the instrument here involved constitutes a pledge or a mortgage. For present purposes we deem determination of this issue unimportant. Obviously what the parties intended to accomplish was to give plaintiff a claim upon Mullin's interest in the Ristine estate to the extent of the loan made, with interest. If he were alive when this action was brought no one would doubt that, assuming the truth of the allegations contained in plaintiff's complaint, a cause of action was pleaded. Mullin's death did not terminate or invalidate the contract. A reading of it leads to the conclusion that it was given as security for Mullin's indebtedness to the bank. In re Estate of Browning, 189 Minn. 375, 379, 249 N. W. 573. So one may call or label the instrument whatever one pleases, yet the result seems perfectly clear, *i. e.,* that a lien was created by the mentioned instrument. "A 'lien' is defined as a hold or claim which one person has upon the property of another as security for some debt or charge." Atwater v. Manchester Sav. Bank, 45 Minn. 341, 346, 48 N. W. 187, 188, 12 L. R. A. 741. "An equitable lien exists when there is a contract, express or implied, sufficiently indicating an intention to make some particular property a security for a debt or other obligation, * * * It may arise wholly from considerations of right and justice * * *." 4 Dunnell, Minn. Dig. (2 ed. & Supps.) § 5577b.

■ We cannot see that the statute of limitations in any way impedes plaintiff's rights. The right to claim the money coming from the Ristine estate accrued when the decree of distribution was made.

Until then there was nothing upon which a cause of action as to the fund here involved would lie. It has been repeatedly held that the statute of limitations begins to run when the cause of action accrues. Weston v. Jones, 160 Minn. 32, 199 N. W. 431; Everett v. O'Leary, 90 Minn. 154, 95 N. W. 901. And in Ganser v. Ganser, 83 Minn. 199, 86 N. W. 18, 85 A. S. R. 461, it was held that the statute of limitations commences to run against an action on an administrator's bond from the time of entry of the final decree. (Our latest case on this phase is Burns v. New Amsterdam Cas. Co. 205 Minn. 391, 285 N. W. 885.) If the statute is to be considered as applicable to the Mullin estate, then clearly the statute has not run as the claim was filed and allowed in and by the probate court having jurisdiction of his estate, and that matter is still pending and unfinished. Under our statute, 2 Mason Minn. St. 1927, § 8816, it is provided that the order allowing a claim "shall have the effect of a judgment," and a judgment does not outlaw until ten years after entry thereof. *Id.* § 9190. No case has been cited holding that the statute of limitations runs against a duly allowed claim where, as here, the settlement of the estate is still pending. The cases hold to the contrary. 24 C. J. p. 785 [§ 1956] cc, and cases under note 38; In re Estate of Anderson, 200 Minn. 470, 274 N. W. 621, 112 A. L. R. 287. Mullin's death prior to the enforcement of the lien created by the assignment cannot affect plaintiff's rights thereunder. In re Estate of Browning, *supra.*

■ Upon Mullin's death it became necessary to have someone appointed to take charge of his estate. The executrix, respondent here, was so appointed. It became her duty to "take charge of, collect and manage the estate" left by her husband. She represents the estate in her official capacity. 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3558. There is no defect of parties defendant, no question of homestead being involved.

This suit is one to enforce a secured claim. There is no doubt about this. We hold that the district court has jurisdiction, and that the complaint states a cause of action. Therefore it was error to sustain the demurrer upon any of the grounds pleaded.

·Order reversed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.

MR. JUSTICE LORING took no part.

